David Puryear, Justice
Appellee Sunstate Equipment Co., LLC, a Delaware company with headquarters in Arizona, operates in several Texas metropolitan areas and rents heavy machinery to contractors, charging delivery and pick-up fees as part of its contracts. It pays franchise taxes and included its delivery and pick-up fees in its Cost-of-Goods-Sold ("COGS") deduction under section 171.1012 of the tax code. See Tex. Tax Code § 171.1012 ; see generally id. §§ 171.0001-.665 (provisions related to franchise tax). Appellant Glenn Hegar, Comptroller of Public Accounts of the State of Texas, conducted an audit and determined that the delivery and pick-up fees should not have been included in the COGS deduction, requiring Sunstate to pay almost $130,000 in taxes and almost *535 $11,000 in penalties and interest. Sunstate paid those taxes under protest and filed suit seeking a refund of those sums. See id. §§ 112.051-.060 (taxpayer's suit after protest payment). The parties filed competing motions for summary judgment, relying on a limited stipulation of facts, and, without specifying the grounds on which it relied, the trial court granted summary judgment in favor of Sunstate, determining that Sunstate was entitled to include its delivery and pick-up costs in its COGS deduction[1] and thus entitled to a total refund of $140,495.88 for the tax years 2008 and 2009. The Comptroller and additional appellant Ken Paxton, Attorney General of the State of Texas, (collectively referred to as "the Comptroller") filed this appeal. We reverse the trial court's order granting summary judgment and render judgment in favor of the Comptroller.
Standard of Review and Applicable Statutes
We review de novo a trial court's granting of summary judgment and, in the case of competing motions for summary judgment, consider all questions presented and render the judgment the court should have rendered. Mid-Century Ins. Co. v. Ademaj , 243 S.W.3d 618, 621 (Tex. 2007) (quoting Argonaut Ins. Co. v. Baker , 87 S.W.3d 526, 529 (Tex. 2002) ). When the trial court's order does not specify the grounds for granting summary judgment, we will affirm if any of the theories presented to the trial court and preserved for our review are meritorious. Provident Life & Accident Ins. Co. v. Knott , 128 S.W.3d 211, 216 (Tex. 2003). In construing a statute, we seek to give effect to the legislature's intent, beginning with the statute's plain meaning, "which we derive 'from the entire act and not just from isolated portions.' " Ademaj , 243 S.W.3d at 621 (quoting State ex rel. State Dep't of Highways and Pub. Transp. v. Gonzalez , 82 S.W.3d 322, 327 (Tex. 2002) ). "Thus, we 'read the statute as a whole and interpret it to give effect to every part.' " Id. (quoting Jones v. Fowler , 969 S.W.2d 429, 432 (Tex. 1998) ). "When statutory text is clear, it is determinative of legislative intent, unless enforcing the plain meaning of the statute's words would produce an absurd result." Combs v. Newpark Res., Inc. , 422 S.W.3d 46, 49 (Tex. App.-Austin 2013, no pet.) (citing Entergy Gulf States, Inc. v. Summers , 282 S.W.3d 433, 437 (Tex. 2009) ).
A franchise tax is imposed on a taxable entity that does business in or is chartered or organized in Texas. Tex. Tax Code § 171.001(a).[2] A taxable entity is responsible for determining its "margin" under section 171.101, using that sum to determine its "apportioned margin" under section 171.106, and then subtracting from its apportioned margin "any other allowable deductions to determine the taxable entity's taxable margin." Id. § 171.101(a). Under the version of section 171.101 that was in effect in 2008 and 2009, an entity's margin was "the lesser of (1) 70% of the taxable entity's total revenue or (2) the taxable entity's total revenue minus, at the entity's election, either cost of goods sold, as determined under section 171.1012 (the COGS calculation) or compensation, as determined under section 171.1013 (the compensation calculation)."
*536 Hegar v. CGG Veritas Servs. (U.S.), Inc. , No. 03-14-00713-CV, 2016 WL 1039054, at *1 (Tex. App.-Austin Mar. 9, 2016, no pet.) (mem. op.) (citing Act of May 19, 2006, 79th Leg., 3d C.S., ch. 1, § 5, 2006 Tex. Gen. Laws 1, 8, as amended by Act of June 15, 2007, 80th Leg., ch. 1282, § 11, 2007 Tex. Gen. Laws 4282, 4287 (amended 2013) (current version at Tex. Tax Code § 171.101 )).
Section 171.1012 provides that an entity may take a COGS deduction for "all direct costs of acquiring or producing the goods," including labor costs, "cost of materials that are an integral part of" the goods,[3] "handling costs, including costs attributable to processing, assembling, repackaging, and inbound transportation costs," storage costs, and costs of renting, leasing, maintaining, and repairing equipment, facilities, or real property directly used for production of the goods[4] ; post-production direct costs, including storage and handling provided for by subsection (c)[5] ; and indirect or administrative overhead costs allocable to the acquisition or production of goods, up to four percent of the entity's total indirect or administrative overhead costs. Tex. Tax Code § 171.1012(c), (d), (f). Specifically excluded from COGS eligibility are "distribution costs, including outbound transportation costs," rehandling costs, and the cost of renting or leasing equipment, facilities, or real property not used for the production of the goods.[6] Id. § 171.1012(e).
A COGS deduction is generally only available to the taxable entity that owns the "goods" in question. Id. § 171.1012(i). However, the legislature extended access to the deduction in limited circumstances. First, certain kinds of motor vehicle rental or leasing companies, a railcar rolling stock rental or leasing company, or a heavy construction equipment rental or leasing company (such as Sunstate) may "subtract as a cost of goods sold the costs otherwise allowed by this section in relation to tangible personal property that the entity rents or leases in the ordinary course of business." Id. § 171.1012(k-1). Additionally, an "entity furnishing labor or materials to a project for the construction, *537 improvement, remodeling, repair, or industrial maintenance ... of real property" is considered to be the owner of the labor or materials and "may include the costs, as allowed by this section, in the computation of cost of goods sold." Id. § 171.1012(i).
Stipulated Facts
The parties' limited stipulation of facts agreed that between June 1, 2008, and March 31, 2011:
• Sunstate rented heavy construction and industrial equipment on an "as needed" basis and qualified as a heavy construction equipment rental or leasing company under section 171.1012(k-1)(2). Its contracts were generally short-term, from one day to multiple months, and its customers were usually subcontractors.
• Sunstate operated in the Houston, Dallas-Fort Worth, El Paso, Austin, and San Antonio areas, and most of its customers could not pick up and return the equipment. Sunstate typically delivered its rental equipment to the construction site and picked it up at the end of the rental term (in about eighty percent of its contracts). Sunstate included separate delivery and pick-up charges in the rental fees it charged.
• Sunstate bought and maintained a fleet of delivery vehicles, hired employees to do the pick-ups and deliveries, and maintained facilities to store the delivery vehicles, incurring labor expenses for the delivery employees, vehicle depreciation, property taxes and insurance costs on the vehicles and related property, and fuel and maintenance expenses for the fleet.
• If Sunstate had not delivered and picked up the equipment, it would not have made any rental revenues, and "the delivery and pick-up component of Sunstate's business activity was an integral part of its business operations."
• In computing its franchise tax liability, Sunstate deducted its COGS from its total revenue. Sunstate was audited for franchise tax compliance in 2008 and 2009, and the Comptroller disallowed the delivery and pick-up costs as part of the COGS deduction, recategorizing some of the asserted COGS as indirect or administrative costs. The Comptroller then assessed deficiencies of $54,776.48 for 2008 and $74,886.05 for 2009, plus penalties and interest. Sunstate exhausted its administrative remedies and paid the alleged deficiencies, penalties, and interest under protest.
Discussion
The Comptroller asserts that (1) Sunstate's delivery and pick-up fees may not be included in its COGS deduction under subsections 171.1012(c), (d), (e), (f), or (k-1); (2) those fees did not constitute labor furnished to a project so as to qualify them as a COGS deduction under subsection 171.1012(i); and (3) the trial court "otherwise err[ed]" in granting summary judgment for Sunstate and denying the Comptroller's motion for summary judgment.
Subsection 171.1012(k-1)
Under section 171.1012(k-1), "[n]otwithstanding any other provision of this section," Sunstate may deduct "the costs otherwise allowed by this section in relation to tangible personal property that [Sunstate] rents or leases in the ordinary course of business." See id. § 171.1012(k-1). Sunstate argues that we should read the statute to allow it to include "all costs it incurred in relation to the renting of its heavy construction equipment, notwithstanding any other provisions of [section] 171.1012." (Emphasis added.) We do not believe that Sunstate's interpretation comports with the statute's plain language or the legislative *538 intent that can be gleaned from that language.
Sunstate argues that our focus in interpreting section 171.1012 should be on Sunstate's revenue, while the Comptroller contends that our focus must be on the goods. We agree with the Comptroller that Sunstate is attempting to invert the legislature's chosen phrasing and rewrite the statute to allow a heavy equipment rental company to subtract costs "in relation to the rental or leasing of tangible personal property," rather than allowing such an entity to subtract costs "in relation to tangible personal property that the entity rents or leases." See Tex. Tax Code § 171.1012(k-1).
In its motion for summary judgment, Sunstate argued that the phrase "renting or leasing the heavy equipment" should be substituted in for "goods" throughout section 171.1012. Thus, subsection (k-1) would allow it to deduct " 'all direct costs of [renting or leasing] the [heavy equipment],' including the direct costs enumerated in" subsection 171.1012(c); "additional costs 'in relation to' the rented or leased equipment" as enumerated in subsection 171.1012(d), including "post-leasing direct costs including storage and handling costs, the costs of insurance on facilities or equipment, and utilities expenses"; and "up to 4% of all 'indirect or overhead costs ... allocable to the [renting or leasing of the equipment]' " under subsection 171.1012(f). Sunstate asserted that subsection 171.1012(c)'s list of "direct" costs is not exclusive and that it was "entitled to include 'all' direct costs whether or not such costs are specifically enumerated" in subsection (c). It further claimed that its delivery and pick-up costs could be either direct or additional costs because its customers generally could not pick up or return the equipment themselves and thus would not have rented the equipment if Sunstate had not provided those "necessary costs of [its] business."
Sunstate asserts that it should be allowed these asserted COGS deductions because without providing delivery and pick-up services, it could not operate its business and, therefore, those costs "are direct costs incurred as an integral part" of its business. This, however, overlooks the legislature's clear distinction between costs a business incurs to obtain the goods it will sell, whether through production or acquisition, and costs it incurs in selling or distributing the goods. See id. § 171.1012(c) - (f). Sunstate provides no persuasive reasons for allowing a rental company to disregard that distinction. Instead, its arguments boil down to an assertion that it should simply be allowed to deduct any costs it incurs in relation to its rental business.[7]
*539 The supreme court recently said that in considering a tax statute, we "should not disregard the economic realities underlying the transactions in issue." Combs v. Roark Amusement & Vending, L.P. , 422 S.W.3d 632, 637 (Tex. 2013). However, the court has explained that in making that observation, it had not suggested "that, in the guise of considering the economic realities or essence of the transaction, courts were authorized to impose an entirely new requirement" that is not found in the language of the tax statute.[8] Combs v. Health Care Servs. Corp. , 401 S.W.3d 623, 627 n.8 (Tex. 2013). Thus, we must take the legislature "at its word and giv[e] the statute its plain meaning." Id. at 627.
Bearing these rules in mind, we agree instead with the Comptroller's interpretation of the statute, which is that Sunstate may deduct "all direct costs of acquiring or producing the [heavy construction equipment]" that forms the basis of Sunstate's business, as well as additional costs "in relation to the taxable entity's [heavy construction equipment]." See Tex. Tax Code § 171.1012(c), (d), (k-1). This reading of the statute is logical and consistent with the apparent purpose of subsection (k-1)-to extend to renters of heavy equipment the same COGS deductions available to a company that sells identical equipment. It makes little sense to allow a rental company a broader COGS deduction than is available to sellers of the same equipment, who are limited to deducting their costs of obtaining the equipment. Nowhere in the language of this statute or the circumstances surrounding its enactment do we find an indication that the legislature intended to grant a heavy equipment rental company a COGS deduction for every cost associated with the company's chosen business model. See Health Care Servs. , 401 S.W.3d at 627 (look to plain meaning of statutory language).
We hold that by providing that companies such as Sunstate "may subtract as a cost of goods sold the costs otherwise allowed by this section in relation to tangible personal property that the entity rents or leases in the ordinary course of business," the legislature intended to extend the COGS deduction to allow such companies to deduct their costs of obtaining the equipment they then rent out. The question *540 that remains is whether Sunstate's delivery and pick-up costs fall into an allowable category of expenses set out in section 171.1012(c), (d), or (f). We hold that they do not.
As we noted earlier, the costs allowed by section 171.1012 generally relate to the acquisition, production, or storage of goods, and whether a cost is eligible largely depends on when the cost was incurred: costs related to producing, obtaining, manufacturing, or storing goods are eligible, while costs incurred in selling or in the post-sale handling of the goods are not. Compare Tex. Tax Code § 171.1012(c), (d), (f), with id. § 171.1012(e) ; see Newpark Res. , 422 S.W.3d at 53 (entity "generally cannot include costs related to the actual sale of goods-such as distribution, advertising, rehandling, or bidding expenses-in its cost-of-goods-sold deduction"). Delivery and pick-up costs are not "direct costs of acquiring or producing" the equipment that Sunstate then rents. See Tex. Tax Code § 171.1012(c). They are not eligible additional, indirect, or administrative costs. See id. § 171.1012 (d), (f). Nor do we believe that they fall among the "certain other expenses" that may be included in a heavy equipment rental company's COGS deduction. See In re Nestle USA, Inc. , 387 S.W.3d 610, 615 (Tex. 2012) (citing Tex. Tax Code § 171.1012(k-1) ). Section 171.1012 does not, of course, address delivery and pick-up fees in the rental context, but it does specifically disallow a deduction for "distribution costs, including outbound transportation costs," and "rehandling costs" in the context of the sale of goods. Tex. Tax Code § 171.1012(e)(3), (6). The costs in question here are much more akin to those excluded costs than to any of the allowable costs included in the statute. Allowing Sunstate to take a COGS deduction for the costs of delivering and picking up its equipment while disallowing a seller of the same equipment from deducting its delivery and rehandling costs would again favor Sunstate over the seller.
Under the unambiguous language used by the legislature in subsection (k-1), Sunstate and similar heavy construction equipment rental companies can include in their COGS deductions many of the costs they incur in obtaining and maintaining the heavy equipment that they rent out-inbound transportation, storage and inbound handling costs, depreciation, repairs, insurance, and the like. They may not include costs that a retailer or producer of heavy equipment would be explicitly barred from including in its COGS deduction.[9] We sustain the Comptroller's arguments related to subsection 171.1012(k-1).[10]
Subsection 171.1012(i)
In its motion for summary judgment, Sunstate argued alternatively that its delivery and pick-up costs "constituted labor" on a construction project or other improvements to real property and could be deducted under subsection 171.1012(i). We hold that subsection (i) is not available to Sunstate.
*541 As we set out earlier, subsection 171.1012(i) states that an "entity furnishing labor or materials to a project for the construction, improvement, remodeling, repair, or industrial maintenance ... of real property" is considered to be the owner of the labor or materials and "may include the costs, as allowed by this section, in the computation of cost of goods sold." Tex. Tax Code § 171.1012(i). The apparent intent of subsection (i) appears to have been to extend COGS to developers of land or contractors and subcontractors who work on real-property-improvement projects. See id. How subsection (i) should be applied, however, is irrelevant here because, although Sunstate does provide construction equipment for such projects, its business, the rental of heavy construction equipment, is specifically addressed by subsection (k-1). Sunstate may not opt to take a COGS deduction under subsection (i), which might arguably apply, rather than subsection (k-1), which definitely and specifically applies. See Lexington Ins. Co. v. Strayhorn , 209 S.W.3d 83, 86 (Tex. 2006) (when overlapping statutes cannot be reconciled, statute applicable to specific situation prevails over broadly applicable statute); Sultan v. Mathew , 178 S.W.3d 747, 751 (Tex. 2005) ("We must avoid, when possible, treating statutory language as surplusage," and "Our interpretation is also guided by the principle that a specific statute controls over a more general one."). Sunstate's access to COGS is limited to subsection (k-1).
However, even if we agreed that Sunstate, a company that fits clearly into subsection 171.1012(k-1), a provision tailored specifically for its line of business, could attempt to seek a COGS deduction under another provision, Sunstate could not turn to subsection (i) for relief.
Only an entity that furnishes labor or materials to a project for the improvement of real property may take a deduction under subsection (i) for its "costs, as allowed by this section." Tex. Tax Code § 171.1012(i). "The analytic framework for determining whether a particular 'labor cost' is includable as a cost of goods sold under subsection 171.1012(i), therefore, requires determining whether the particular activity is an essential and direct component of the 'project for the construction ... of real property.' " CGG Veritas , 2016 WL 1039054, at *3 (quoting Newpark Res. , 422 S.W.3d at 56 ).
In Newpark Resources , the taxpayer was able to obtain a COGS deduction for labor furnished in hauling away used drilling mud and other waste products from oil well drilling sites. 422 S.W.3d at 48. That labor was in fact provided to the oil well projects, and without the removal of used drilling mud and other waste material brought up during the drilling process, a well cannot be completed. Id. at 57 ("There was testimony at trial that the waste material was an inescapable byproduct of drilling, that removal and disposal of this waste material was essential to continue drilling, and that without this disposal the drilling process would come to an immediate halt."). Similarly, in CGG Veritas , the taxpayer acquired and processed seismic data to aid in determining where to drill for oil and gas, and the trial court found that those services were "integral, essential, and direct" components of the drilling process. 2016 WL 1039054, at *2, 4.
In contrast, Sunstate showed that under its contracts with its customers, who were "generally subcontractors involved in construction work," it delivered its heavy construction and industrial equipment to and picked up the equipment from construction *542 sites.[11] Sunstate's customers might be able to turn to subsection (i) and assert that their labor on the projects were encompassed by the subsection (i) COGS extension, but Sunstate may not. Sunstate delivers equipment that will presumably be used on the projects by Sunstate's customers, it itself does not provide labor that can be considered a direct component of the improvement projects, nor does the record reflect that Sunstate's services could be considered an essential component of the projects. See id. at *3 ("determining whether a particular 'labor cost' is includable as a cost of goods sold under subsection 171.1012(i), therefore, requires determining whether the particular activity is an essential and direct component of the 'project for the construction ... of real property' "); see also Newpark Res. , 422 S.W.3d at 57 ("it is difficult to view NES's disposal of waste material as though it were not an essential and direct component of the drilling process"). To allow Sunstate to characterize its delivery and pick up of its rental equipment as labor "furnish[ed]" as an essential and direct component of the improvement projects would stretch subsection (i) too far. Thus, even if we were to overlook the fact that subsection (k-1) is tailored specifically for companies such as Sunstate, thus obviating any need to look elsewhere in section 171.1012 for the ability to take a COGS deduction, Sunstate has not shown that it can deduct its delivery and pick-up costs under subsection (i).
Remaining Arguments
Sunstate also contends that subsection 171.1012(e) only limits Sunstate's "additional costs" under subsection (d), not its "direct" costs under subsection (c). It asserts that subsection (e) applies only to limit the indirect costs listed in subsection (d), that it cannot limit a taxable entity's "unequivocal ability to include all direct costs as provided by § 171.1012(c)," and that the Comptroller has conducted an "inverted analysis of subsection (e) and (c)." We disagree. Subsection (c) does allow the deduction of direct costs, providing a non-exclusive list of possible eligible costs. Tex. Tax Code § 171.1012(c). Then, it allows for the deduction of certain other specific costs, incurred after the goods are produced or acquired. Id. § 171.1012(d). Subsection (e) does not "limit" or disallow a direct cost under subsection (c). Instead, it explains what, by statute, is considered a cost of goods, providing clarification for costs that might be questionable or arguable. See id. § 171.1012(e). Nothing in the Comptroller's analysis is inverted, nor does determining that Sunstate's delivery and pick-up costs are more like rehandling or distribution costs than like handling and inbound delivery costs somehow offend the structure of the statute.
Finally, Sunstate argues that if it is subject to the same COGS deductions as a retailer,[12] it should also be subject to the same tax rate. First, "[t]he issues to be determined in the suit are limited to those arising from the reasons expressed in the written protest as originally filed." Id. § 112.053(b). Sunstate's protest nowhere references its tax rate-this argument was raised for the first time in its motion for summary judgment. Further, the legislature did not provide any mechanism that might extend the lower retail or wholesale-trade rate to rental companies like Sunstate. See id. § 171.002(a), (b). Instead, the *543 legislature allowed such companies to take COGS deductions that would otherwise be unavailable to them, as long as those costs are "otherwise allowed" by section 171.1012, limiting its special dispensation to the COGS calculation. See id. § 171.1012(k-1). We overrule Sunstate's argument about its tax rate.
Conclusion
Sunstate's delivery and pick-up costs are not allowable under section 171.1012, and Sunstate may not seek to expand its available COGS options by claiming under subsection (i). We have overruled Sunstate's remaining arguments. We therefore reverse the trial court's ruling in Sunstate's favor and render judgment granting the Comptroller's motion for summary judgment.

Sunstate included the following in its asserted COGS deductions: delivery/pick-up drivers' wages, payroll taxes, and benefits; delivery vehicle depreciation, insurance, property taxes, fuel, oil, fluids, and lubricants; and laundry and uniforms for delivery/pick-up drivers and employees who worked on the rental equipment.

We will cite to the current version of statutes when intervening amendments do not affect our discussion.

"Goods" are defined as "real or tangible personal property sold in the ordinary course of business of a taxable entity," and "tangible personal property" as relevant to this case is defined as "personal property that can be seen, weighed, measured, felt, or touched or that is perceptible to the senses in any other manner." Tex. Tax Code § 171.1012(a)(1), (3)(A)(i).

Subsection (c) also includes the cost of materials consumed in producing the goods; depreciation, depletion, and amortization associated with and necessary to the production of the goods; research and design activities directly related to the production of the goods; geophysical costs to locate mineral-producing property; taxes paid for materials or services that are direct production costs; the cost of producing or acquiring electricity sold; and "a contribution to a partnership in which the taxable entity owns an interest that is used to fund activities, the costs of which would otherwise be treated as cost of goods sold of the partnership, but only to the extent that those costs are related to goods distributed to the taxable entity as goods-in-kind in the ordinary course of production activities rather than being sold." Id. § 171.1012(c).

Subsection (d) also includes insurance for facilities or equipment directly used to produce the goods; insurance on the produced goods; deterioration, obsolescence, spoilage, and abandonment of the goods; pre-production direct costs for property held for future production, including storage and handling provided for by subsection (c); utilities directly used in producing the goods; quality control costs; and licensing or franchise costs. Id. § 171.1012(d).

Subsection (e) also excludes "selling costs, including employee expenses related to sales," advertising costs, idle facility expenses, bidding costs, interest, income taxes, strike expenses, officer compensation, and compensation paid to undocumented workers. Id. § 171.1012(e).

Sunstate quotes from a brief filed by the Comptroller in In re Nestle USA stating that the legislature intended to allow companies with different business models to deduct "primary costs" on par with sellers of similar goods. See Post-Submission Brief for Real Party in Interest at 10-11, In re Nestle USA, Inc. , 387 S.W.3d 610 (Tex. 2012) (No. 12-0518), available at http://www.search. txcourts.gov/SearchMedia.aspx?MediaVersionID=3744e7f1-b6aa-4fc9-a0e1-274087c8637d&coa=cossup&DT=OTHER&MediaID=5df5bb99-d6eb-4bb2-91ac-20dd0bdf326f. This does not assist Sunstate, however. A rental company's "primary costs" that would be "on par with" a seller's costs would include: the cost of purchasing the equipment, cost of obtaining the equipment from the manufacturer, repair, storage, and maintenance costs, and the like. In other words, costs that are eligible for COGS are those incurred in obtaining and storing the goods or rental equipment, not in selling or delivering them. The costs specifically disallowed for COGS include, as mentioned earlier, outbound transportation and rehandling costs as well as bidding costs, advertising costs, and "selling costs." Tex. Tax Code § 171.1012(e).
Nor does this statement by the supreme court in In re Nestle USA support Sunstate's position:
the Cost of Goods Sold, includes "all direct costs of acquiring or producing goods", some indirect costs like insurance, utilities, and quality control, and up to 4% of other "indirect or administrative overhead costs". Public lending institutions and lessors of motor vehicles, heavy construction equipment, and rolling stock may include certain other expenses in their Cost of Goods Sold.
387 S.W.3d at 615 (quoting Tex. Tax Code § 171.1012, citations omitted). The supreme court did not address what may be included in those "certain other expenses," id. , and there is nothing further in the opinion that could support as broad a reading of "certain other expenses" as the one Sunstate advocates. That one statement in no way shows that the supreme court "has recognized that § 171.1012(k-1) allows heavy construction equipment rental companies to include in COGS the costs incurred to rent and lease equipment."

Although it does not affect our analysis, we note that Combs v. Health Care Services Corp. involved a tax exemption. 401 S.W.3d 623, 624 (Tex. 2013). As in Combs v. Newpark Resources, Inc. , the parties dispute whether the COGS deduction is an exemption from a tax or an imposition of a tax because that distinction determines whether the statute is strictly construed in favor of or against the taxpayer. See 422 S.W.3d 46, 50 n.3 (Tex. App.-Austin 2013, no pet.) (citing Upjohn Co. v. Rylander , 38 S.W.3d 600, 606 (Tex. App.-Austin 2000, pet. denied) ). However, this rule of construction applies only when the statute is ambiguous. See ids="11123320" index="36" url="https://cite.case.law/sw3d/38/600/#p606">id.

Although Sunstate's pick-up services do not translate to a seller of heavy equipment, its delivery services do, and it does not explain why, despite section 171.1012's requirement that a rental company's COGS be "otherwise allowed," it should be able to deduct its delivery costs when section 171.1012(e) explicitly excludes such costs.

We disagree with Sunstate that its pick-up costs were not "rehandling costs" but "could be characterized as 'inbound transportation costs' " or as "deductible 'post-[rental or leasing] direct costs allocable to the [equipment].' " The latter argument is disposed of by our explanation that the acquisition of the equipment, not the "rental or leasing" of the equipment, is the proper focus of the statute, and the former argument stretches ordinary language too far.

Sunstate does not argue that it provided materials, only that its delivery and pick-up services were labor under subsection (i).

The default franchise tax rate is 0.75 percent of an entity's taxable margin, but an entity "primarily engaged in retail or wholesale trade" is subject to a lower rate. Tex. Tax Code § 171.002(a), (b).