# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-18-00247-CV

**Rent-A-Center, Inc., Appellant**

**v.**

**Glenn Hegar, in his capacity as Comptroller of Public Accounts of The State of Texas; and Ken Paxton, in his capacity as Attorney General of The State of Texas, Appellees**

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT NO. D-1-GN-11-001059, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING**

---

## O P I N I O N

Appellant Rent-A-Center, Inc. complains of the trial court's judgment awarding it only a portion of the franchise taxes it paid under protest. Appellees are Glenn Hegar, in his capacity as Comptroller of Public Accounts of The State of Texas, and Ken Paxton, in his capacity as Attorney General of The State of Texas ("the Comptroller"). The sole issue on appeal is whether Rent-A-Center must reduce its cost-of-goods-sold ("COGS") deduction for the merchandise it sold in 2007 by depreciation on that merchandise during the time it was rented prior to sale, as reflected on Rent-A-Center's federal tax return. *See* Tex. Tax. Code §§ 171.101(a)(1), .1012. Answering that question in the affirmative, we affirm the trial court's judgment.

## Background Summary

Rent-A-Center provides furniture, electronics, appliances, and computers to consumers, either through immediate, outright purchase or, more commonly, through "rent to own" agreements. *Rent-A-Center, Inc. v. Hegar*, 468 S.W.3d 220, 221 (Tex. App.—Austin 2015, no pet.). Under the "rent to own" agreements, the customer makes weekly, semi-monthly, or monthly payments over a specified period of time—the average term is eighteen months—and becomes the owner of the merchandise at the end of the term, provided the customer has not terminated or breached the agreement. *Id.* at 222. The merchandise is sold in an average of approximately twenty months, the average number of rental-purchase agreements after which an item is ultimately sold is three, and the sale price that a customer pays for an item decreases from one rental-purchase agreement to the next for that same item because the item is then considered used. *Id.* at 224.

In its 2008 franchise tax report, Rent-A-Center claimed a retailer's COGS deduction that included $562,966,741 referred to in Rent-A-Center's documentation as "Rental-Purchase Sales." After an audit, the Comptroller determined that Rent-A-Center was not entitled to a COGS deduction at all, classifying Rent-A-Center as a service provider and not a retail business. Rent-A-Center paid $1,070,683.67 in franchise taxes under protest, and then sued, asserting that (1) it should be allowed to take a COGS deduction and (2) it was entitled to its entire asserted COGS deduction, with no reduction for depreciation of the goods prior to sale. On the first issue, the trial court agreed with the Comptroller that Rent-A-Center was not entitled to a COGS deduction at all. On appeal of that ruling, however, this Court disagreed, determining that Rent-A-Center is entitled to a COGS deduction because its business is "more like selling than leasing and that Rent-A-Center is, therefore,

2

primarily engaged in retail trade." *Id.* at 225. We remanded to the trial court for consideration of the second issue—the proper amount of Rent-A-Center's COGS deduction. *Id.*

On remand, Rent-A-Center asserted that it was entitled to a COGS deduction representing the total cost, when new, of all the merchandise it sold in 2007. The Comptroller, on the other hand, asserted that Rent-A-Center was required to adjust its COGS basis to account for the fact that the merchandise at the time of final sale had been rented or used, by subtracting an amount equal to the depreciation Rent-A-Center had claimed on this merchandise in its federal tax return. Following a hearing on the issue, the trial court agreed with the Comptroller and ordered that Rent-A-Center receive a refund of $941,847.84. It is from that order that Rent-A-Center appeals.[1]

## Standard of Review

In construing a statute, we seek to ascertain and effectuate the Legislature's intent in enacting the statute. *Southwest Royalties, Inc. v. Hegar*, 500 S.W.3d 400, 404 (Tex. 2016); *Upjohn Co. v. Rylander*, 38 S.W.3d 600, 607 (Tex. App.—Austin 2000, pet. denied). "We start with the text because it is the best indication of the Legislature's intent." *Ojo v. Farmers Grp., Inc.*, 356 S.W.3d 421, 435 (Tex. 2011). We examine the language used in the statute, in the context of the entire act, and we read every word, phrase, and expression presuming that the Legislature chose each word for a purpose and purposefully omitted words not chosen. *City of Dallas v. TCI W. End, Inc.*, 463 S.W.3d 53, 55 (Tex. 2015); *Upjohn Co.*, 38 S.W.3d at 607. When a statute is unambiguous, we

---

[1] This appeal was transferred by a docket equalization order to the El Paso Court of Appeals in August 2016, then transferred back to this Court in April 2018. *See* Misc. Docket No. 18-9054 (Tex. Apr. 12, 2018).

do not turn to extrinsic aids or canons of construction to construe it—we simply follow the unambiguous language. *City of Richardson v. Oncor Elec. Delivery Co.*, 539 S.W.3d 252, 261 (Tex. 2018); *Combs v. Roark Amusement & Vending, L.P.*, 422 S.W.3d 632, 635 (Tex. 2013); *Ojo*, 356 S.W.3d at 435-36.

If a statute is ambiguous, we will generally defer to the agency's interpretation as long as that interpretation is consistent with the statutory language and not plainly erroneous. *Texas Dep't of Ins. v. American Nat'l Ins. Co.*, 410 S.W.3d 843, 853 (Tex. 2012); *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 438 (Tex. 2011). Our deference, however, is "tempered by several considerations," and we look to whether "(1) the agency's interpretation has been formally adopted; (2) the statutory language at issue is ambiguous; and (3) the agency's construction is reasonable." *American Nat'l Ins. Co.*, 410 S.W.3d at 853-54 (quoting *Railroad Comm'n of Tex. v. Texas Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 625 (Tex. 2011)); *see Texas Utils. Elec. Co. v. Sharp*, 962 S.W.2d 723, 726 (Tex. App.—Austin 1998, pet. denied).

The legislature enacted Texas's franchise tax statutes "purely for revenue purposes," and we are to liberally construe the relevant statutes so as to effectuate that purpose. *Isbell v. Gulf Union Oil Co.*, 209 S.W.2d 762, 764 (Tex. 1948) (quoting *Federal Crude Oil Co. v. Yount-Lee Oil Co.*, 52 S.W.2d 56, 61 (Tex. 1932)); *Upjohn Co.*, 38 S.W.3d at 606. A statute that imposes a tax is "strictly construed against the taxing authority and liberally construed in favor of the taxpayer." *Upjohn Co.*, 38 S.W.3d at 606; *see Calvert v. Texas Pipe Line Co.*, 517 S.W.2d 777, 781 (Tex. 1974). An exemption or deduction from tax, however, is disfavored by the law and thus is construed strictly against the taxpayer. *North Alamo Water Supply Corp. v. Willacy Cty. Appraisal*

4

*Dist.*, 804 S.W.2d 894, 899 (Tex. 1991) (tax exemptions undermine equality and uniformity by placing greater burden on some taxpayers rather than on all taxpayers); *Texas Utils. Elec.*, 962 S.W.2d at 726 ("[T]o promote uniformity and equality in taxation, we construe tax exemptions—and provisions tantamount to tax exemptions—strictly against the taxpayer and in favor of the taxing authority.").

**Discussion**

This case presents a limited question: whether Rent-A-Center is entitled to deduct the full cost of merchandise when new as its asserted COGS, totaling $1,055,657,987, or whether it must reduce that deduction by an amount representing the depreciation during the time Rent-A-Center rented out these assets, *see Rent-A-Center*, 468 S.W.3d at 224, here represented by the depreciation it reported on its federal income tax return. To reach our decision, we look to the Texas Tax Code's provisions related to franchise taxes.

With a few exceptions not applicable here, a franchise tax is imposed on every taxable entity that does business in or is chartered or organized in Texas. Tex. Tax Code § 171.001(a). The tax code sets out the franchise tax rate, which is a percentage of the taxable entity's "taxable margin." *Id*. § 171.002. An entity's taxable margin, as relevant here, is calculated by deducting from its total revenue its cost of goods sold. *Id*. § 171.101(a)(1)(B). An entity's COGS deduction is determined under section 171.1012, which provides that the "cost of goods sold includes all direct costs of acquiring or producing the goods," including, *inter alia*: labor costs; costs of materials; costs of materials consumed in production; handling and storage costs; depreciation, depletion, and amortization reported on the entity's federal income taxes and associated with the production of

5

goods; costs for rental and repair of equipment or facilities used for the production of the goods; and engineering and design costs. *Id.* § 171.1012(c). Section 171.1012 further provides:

> (g) A taxable entity that is allowed a subtraction by this section for a cost of goods sold and that is subject to Section 263A, 460, or 471, Internal Revenue Code, may capitalize that cost in the same manner and to the same extent that the taxable entity capitalized that cost on its federal income tax return or may expense those costs, except for costs excluded under Subsection (e), or in accordance with Subsections (c), (d), and (f). If the taxable entity elects to capitalize costs, it must capitalize each cost allowed under this section that it capitalized on its federal income tax return. If the taxable entity later elects to begin expensing a cost that may be allowed under this section as a cost of goods sold, the entity may not deduct any cost in ending inventory from a previous report. If the taxable entity elects to expense a cost of goods sold that may be allowed under this section, a cost incurred before the first day of the period on which the report is based may not be subtracted as a cost of goods sold. If the taxable entity elects to expense a cost of goods sold and later elects to capitalize that cost of goods sold, a cost expensed on a previous report may not be capitalized.

*Id*. § 171.1012(g). Our analysis turns on subsection (g).

The Comptroller asserts that because Rent-A-Center's property was subject to section 263A of the Internal Revenue Code, which requires costs of non-inventory property to be capitalized, Rent-A-Center must therefore reduce its COGS deduction by the amount of depreciation it capitalized on its federal taxes. Rent-A-Center, on the other hand, insists that subsection (g) means that it "must use the same allocation formula and methods it used to allocate direct and indirect costs on its federal tax return" and that subsection (g) "addresses only how a taxpayer determines what costs must be capitalized and added to the cost of goods it sells. It does not say anything about deducting amounts from that capitalized total and does not include the word 'depreciation.'" Rent-A-Center asserts that the fact that it depreciated its capitalized merchandise is irrelevant to the franchise tax calculation.

6

Section 263A—titled, "Capitalization and inclusion in inventory costs of certain expenses"—provides that non-inventory property "shall be capitalized." 26 U.S.C. § 263A(a)(1)(B); *see also* 26 C.F.R. § 1.263A-1(c) ("Under section 263A, taxpayers must capitalize their direct costs and a properly allocable share of their indirect costs to property produced or property acquired for resale."). The applicable federal rules explain, "Costs that are capitalized under section 263A are recovered through depreciation, amortization, cost of goods sold, or by an adjustment to basis at the time the property is used, sold, placed in service, or otherwise disposed of by the taxpayer." 26 C.F.R. § 1.263A-1(c)(4).

The parties acknowledge both that Rent-A-Center may take a COGS deduction and that it is subject to Section 263A.[2] *See* Tex. Tax Code § 171.1012(g). They further agree that Rent-A-Center asserted $562,966,741 in depreciation for the relevant merchandise on its federal income tax return.[3] Thus, under subsection (g), Rent-A-Center could either capitalize its merchandise costs

[2] The Internal Revenue Service explains that "[y]ou cannot depreciate inventory because it is not held for use in your business." IRS Publication 946, "*How to Depreciate Property*," Ch. 1, pg. 5, https://www.irs.gov/pub/irs-pdf/p946.pdf (last visited Apr. 3, 2019). But "[i]f you are a rent-to-own dealer, you may be able to treat certain property held in your business as depreciable property rather than as inventory." *Id*. The IRS also explains that the "recovery period"—"the number of years over which you recover [the property's] cost"—for "[q]ualified rent-to-own property" such as the merchandise sold by Rent-A-Center is three or four years, depending on the depreciation system used. *See id.* Ch. 4, pgs. 28, 29, 31.

[3] In its response to the Comptroller's motion for summary judgment, Rent-A-Center actually stated that it had "deducted depreciation . . . equal to $234,991,362" on its federal income tax return, explaining that it "reduced its original cost of $797,958,103 by $234,991,362 and only included the difference of $562,966,741 as the cost of that merchandise," citing to deposition testimony by Hugh Tollack, Rent-A-Center's Director of Tax Audits, Research and Planning, and to Rent-A-Center's breakdown of its asserted COGS deduction as set out in its "Schedule A." Tollack testified that Rent-A-Center paid approximately $798 million for merchandise for which "the sale was completed in year 2007." Asked why Schedule A listed "Rental-Purchase Sales" totaling $562,966,741, not $797,958,103, Tollack said, "The difference is that the schedule that we were just talking about with

7

"in the same manner and to the same extent that [Rent-A-Center] capitalized that cost on its federal income tax return," or it could expense those costs, provided the costs were not excluded elsewhere in section 171.1012. *Id.* Rent-A-Center chose to capitalize those costs and thus was required to "capitalize each cost allowed under this section that it capitalized on its federal income tax return."[4] *Id.*

Rent-A-Center argues that subsection (g) only required it to allocate its direct and indirect costs as it did on its federal tax return. However, under the unambiguous language of subsection (g), Rent-A-Center was required to capitalize its merchandise costs "in the same manner and to the same extent" that it capitalized those costs on its federal income tax return.[5] *See id.* This dictates that Rent-A-Center's COGS deduction be reduced by the amount of depreciation it claimed on its federal taxes. We therefore overrule Rent-A-Center's issue on appeal.

---

the 798 million, roughly, part of that cost was already deducted in the federal Line 9, so we deducted that 200—well, approximately \$235 million from the \$798 million to arrive at the figure there that shows about \$563 million." Another trial court exhibit shows a table provided by Rent-A-Center that sets out accumulated depreciation over a number of years, totaling \$562,966,741. Although the record appears to reflect some confusion about how much depreciation was claimed, Rent-A-Center has stated in its appellate filings that the approximately \$563 million was its depreciation, and we will accept and rely on that representation of fact.

[4] A commentator discussing the franchise tax noted that if a taxable entity elects to capitalize its expenditures, it must capitalize for COGS purposes the same way it capitalized on its federal income tax return. Ira A. Lipstet, *Franchise Tax Reformed: The New Margin Tax Including 2007 Legislative Changes & Final Comptroller Rules*, Tex. J. Bus. L., Spring 2007, at 1, 28.

[5] Even if the language of subsection (g) was ambiguous, under the canons of construction, we would construe its provisions of how to calculate a COGS deduction strictly against Rent-A-Center. *See Upjohn Co. v. Rylander*, 38 S.W.3d 600, 606 (Tex. App.—Austin 2000, pet. denied).

## Conclusion

Under the unambiguous language of section 171.1012(g), Rent-A-Center was required to reduce its COGS deduction by the amount of depreciation it claimed on its federal taxes, an amount the parties agree was $562,966,741.[6] We therefore affirm the trial court's judgment.

_____

Jeff Rose, Chief Justice

Before Chief Justice Rose, Justices Goodwin and Kelly

Affirmed

Filed:   April 30, 2019

---

[6] Rent-A-Center actually refers in its briefing to $562,**766**,741, asserting that the Comptroller argues that its COGS deduction "must be reduced by $562,766,741, representing the amount of depreciation on those goods that Rent-A-Center claimed as a deduction on its prior federal income tax returns." However, the Comptroller argues that Rent-A-Center claimed $562,**966**,741, a sum that is borne out by the evidence and filings before the trial court.