# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-18-00411-CV

---

**Glenn Hegar, Comptroller of Public Accounts of the State of Texas; and
Ken Paxton, Attorney General of the State of Texas, Appellants**

**v.**

**1st Global, Inc., Appellee**

---

### FROM THE 126TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-17-005832, THE HONORABLE DON R. BURGESS, JUDGE PRESIDING

---

## MEMORANDUM OPINION

Appellants Glenn Hegar, Comptroller of Public Accounts of the State of Texas, and Ken Paxton, Attorney General of the State of Texas, appeal from the trial court's order denying their motion to dismiss for lack of jurisdiction filed in the underlying tax-protest suit brought by appellee 1st Global, Inc. As explained below, we will reverse the trial court's order and render judgment dismissing 1st Global's protest suit.

## BACKGROUND

This case involves the interplay between Sections 112.051, 112.052, and 171.202 of the tax code. *See* Tex. Tax Code §§ 112.051, 112.052, 171.202. Under Section 171.202, a taxable entity that is required to pay franchise taxes must file with the Comptroller an annual report providing the information necessary to compute its franchise-tax obligation. *Id.* § 171.202(a). The report is due by May 16 of each year, but the Comptroller "shall grant an

extension of time" if the entity requests it and remits a certain sum with its extension request.[1]

*Id*. § 171.202(c), (e).  The length of the extension varies depending on whether the taxpayer is required to use electronic funds transfer (EFT) to pay its taxes:  if the entity is "not required by rule to make its tax payments by" EFT, it can obtain an extension to November 15, *id*. § 171.202(c); but if it is "a taxable entity that is required by rule to make its tax payments by" EFT, it can obtain an extension to August 15, *id*. § 171.202(e).[2]

Section 112.051, titled "Protest Payment Required," provides that a taxpayer who contends that a tax "is unlawful or that the public official charged with the duty of collecting the tax . . . may not legally demand or collect the tax" and wishes to bring a protest suit must both "pay the amount claimed by the state" and "submit with the payment" a written protest that states "fully and in detail each reason for recovering the payment."  *Id*. § 112.051.  If the taxpayer complies with those requirements, Section 112.052, titled "Taxpayer Suit After Payment Under Protest," waives the State's sovereign immunity and allows the taxpayer to file suit against the state "before the 91st day after the date the protest payment was made, or the suit is barred."  *Id*. § 112.052; *see In re Nestle USA, Inc.*, 359 S.W.3d 207, 208, 212 (Tex. 2012) (Chapter 112's provision of taxpayer rights of action waives State's immunity from suit).  In the franchise-tax

---

[1] The taxpayer must remit either at least "90 percent of the amount of tax reported as due on the report filed on or before November 15" or "100 percent of the tax reported as due for the previous calendar year on the report due in the previous calendar year and filed on or before May 14."  Tex. Tax Code § 171.202(c), (e).

[2] As relevant to 1st Global, a taxpayer who "paid at least $10,000, but less than $100,000, in a single category of payments or taxes during the preceding state fiscal year, and who the comptroller reasonably anticipates will pay at least that amount during the current state fiscal year, shall transfer all payments in that category" by EFT.  34 Tex. Admin. Code § 3.9(b)(2) (2019) (Comptroller of Public Accounts, Electronic Filing of Returns and Reports; Electronic Transfer of Certain Payments by Certain Taxpayers).  Smaller taxpayers are not required to use EFT.  *See generally id*. § 3.9.

context, Section 112.052(b) allows for the extension of the deadlines for filing the protest statement and protest lawsuit. Tex. Tax Code § 112.052(b). If the taxpayer is granted an extension of time for filing its franchise-tax report "under Section 171.202(c)" and files its franchise-tax report by the extended deadline, its protest statement, otherwise required by Section 112.051 to be submitted with the tax payment, may be filed with the report. *Id.* Further, if those requirements are met, the time for filing a protest suit is extended to ninety days from the date the report is filed. *Id.*

## STANDARD OF REVIEW

In construing a statute, we seek to ascertain and effectuate the legislature's intent in enacting the statute. *Southwest Royalties, Inc. v. Hegar*, 500 S.W.3d 400, 404 (Tex. 2016); *Rent-A-Center, Inc. v. Hegar*, 579 S.W.3d 493, 495 (Tex. App.—Austin 2019, pet. filed). "We start with the text because it is the best indication of the Legislature's intent." *Ojo v. Farmers Grp., Inc.*, 356 S.W.3d 421, 435 (Tex. 2011). We consider the statutory language in the context of the entire act and presume that the legislature chose each word for a purpose and purposefully omitted words not chosen. *City of Dallas v. TCI W. End, Inc.*, 463 S.W.3d 53, 55 (Tex. 2015); *Rent-A-Center*, 579 S.W.3d at 495-96. "When statutory text is clear, it is determinative of legislative intent, unless enforcing the plain meaning of the statute's words would produce an absurd result." *Combs v. Newpark Res., Inc.*, 422 S.W.3d 46, 49 (Tex. App.—Austin 2013, no pet.); *see Hegar v. Sunstate Equip. Co.*, 578 S.W.3d 533, 535 (Tex. App.—Austin 2017, pet. granted). If the statute is unambiguous, we simply consider the statutory language rather than turning to extrinsic aids or canons of construction to construe it. *City of Richardson v. Oncor Elec. Delivery Co.*, 539 S.W.3d 252, 261 (Tex. 2018); *Combs v. Roark Amusement & Vending,*

3

*L.P.*, 422 S.W.3d 632, 635 (Tex. 2013); *Rent-A-Center*, 579 S.W.3d at 496; *see Combs v. Health Care Servs. Corp.*, 401 S.W.3d 623, 630 (Tex. 2013) ("It is true that courts grant deference to an agency's reasonable interpretation of a statute, but a precondition to agency deference is ambiguity; an agency's opinion cannot change plain language." (cleaned up)).

If a statute is ambiguous, on the other hand, we give deference to the interpretation of the agency charged with enforcement of the statute as long as that interpretation is consistent with the statutory language and not plainly erroneous. *Texas Dep't of Ins. v. American Nat'l Ins.*, 410 S.W.3d 843, 853 (Tex. 2012); *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 438 (Tex. 2011); *Rent-A-Center*, 579 S.W.3d at 495-96. Our deference, however, is "tempered by several considerations," and we look to whether "(1) the agency's interpretation has been formally adopted; (2) the statutory language at issue is ambiguous; and (3) the agency's construction is reasonable." *American Nat'l Ins.*, 410 S.W.3d at 853-54 (quoting *Railroad Comm'n of Tex. v. Texas Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 625 (Tex. 2011)); *Rent-A-Center*, 579 S.W.3d at 496.

We generally construe administrative rules in the same manner. *Zimmer US, Inc. v. Combs*, 368 S.W.3d 579, 583 (Tex. App.—Austin 2012, no pet.); *see TGS-NOPEC* ("If there is vagueness, ambiguity, or room for policy determinations in a statute or regulation, as there is here, we normally defer to the agency's interpretation unless it is plainly erroneous or inconsistent with the language of the statute, regulation, or rule."). "Unless a rule is ambiguous, we follow the rule's clear language; when there is vagueness, ambiguity, or room for policy determinations in a rule, we defer to the agency's interpretation unless it is plainly inconsistent with the language of the rule." *Zimmer US*, 368 S.W.3d at 583.

## DISCUSSION

1st Global paid more than $45,000 in franchise taxes for the 2016 tax year, meaning it was required to make "certain payments" by EFT under Rule 3.9(b)(2). *See* 34 Tex. Admin. Code § 3.9(b)(2) (2019) (Comptroller of Public Accounts, Electronic Filing of Returns and Reports; Electronic Transfer of Certain Payments by Certain Taxpayers). On May 12, 2017, 1st Global requested an extension of time to file its 2017 franchise tax report and also submitted a $182,000 "extension payment" via EFT. 1st Global's deadline for filing its report was then extended to August 15, 2017, and on that date, it submitted its 2017 franchise tax report along with a protest letter, seeking a refund of $121,777.41 from the $182,000 paid in May. On October 17, 1st Global filed the underlying protest suit. The Comptroller filed a motion to dismiss for lack of jurisdiction, arguing that the suit was barred by sovereign immunity because 1st Global had paid its $182,000 extension payment without an accompanying protest letter, meaning the payment should not be considered a protest payment under Section 112.051. *See* Tex. Tax Code §§ 112.051, .052. The trial court denied the motion to dismiss, and the Comptroller filed this appeal.

As noted earlier, if a taxable entity is required to pay a tax but believes that the tax is unlawful or that the relevant official may not legally demand or collect it, the taxpayer still must "pay the amount claimed by the state." *Id*. § 112.051(a). If the taxpayer intends to file a protest lawsuit, it must file a written statement of protest *at the same time* the payment is made. *Id.* § 112.051. If such a statement is not submitted at the time, the payment generally is not considered to be a protest payment and may not be the subject of a protest suit. *See Local Neon Co. v. Strayhorn*, No. 03-04-00261-CV, 2005 WL 1412171, at *5 (Tex. App.—Austin June 16, 2005, no pet.) (mem. op.) (purpose of protest-statement requirement is to put State on notice of

5

argument that tax demand is unlawful or unauthorized). Because the Tax Code specifies that only a taxpayer that receives an extension under Section 171.202(c) may postpone the filing of its protest statement to coincide with the filing of its report, the logical corollary is that a taxpayer that obtains an extension under any other subsection does not receive an extension of time to file its protest statement. *See* Tex. Tax Code § 112.052(b). Such a taxpayer must file its protest statement at the time it submits its request for an extension of time and pays the amount specified by Section 171.202. *Id.* The question before us, therefore, is whether 1st Global received an extension of time under subsection (c), as it contends, as opposed to under subsection (e) or (f).[3]

A Subsection (c) extension is only available to "a taxable entity that is not required by rule to make its tax payments by" EFT. *Id.* § 171.202(c). The Comptroller's Rule 3.9(b) governs "Required electronic transfer of certain payments by certain taxpayers pursuant to Tax Code, § 111.0625,"[4] and provides that a taxable entity like 1st Global, which paid between $10,000 and $100,000 "in a single category of payments of taxes during the preceding state fiscal year" and is expected to pay at least that much in the current year, "shall transfer all payments in that category of payments of taxes to the comptroller by means of" EFT. 34 Tex. Admin. Code § 3.9(b)(2). Subsection (i), however, states that "[p]rotested tax payments" under Section 112.051 "must be accompanied by a written statement that fully and in

---

[3] Under Subsection (f), a taxpayer required to pay by EFT that has obtained an extension under Subsection (e) may obtain a further extension if it makes a timely request and remits the difference between what it already remitted when it asked for the first extension and "100 percent of tax" as reflected on the report once it is filed. Tex. Tax Code § 171.202(f).

[4] Section 111.0625 requires the Comptroller to promulgate rules governing when certain categories of taxpayers are required to transfer their tax payments by EFT "in accordance with Section 404.095, Government Code." *Id.* § 111.0625. Section 404.095 bars a state agency from requiring protested tax payments to be made by EFT. Tex. Gov't Code § 404.095(g).

detail sets out each reason for recovery of the payment" but are "not required to be submitted by electronic funds transfer." *Id*. § 3.9(i). "A person who is otherwise required to pay taxes by means of [EFT] may make protested payments by other means," as long as the non-electronic payment is accompanied by a "written statement of protest that fully and in detail sets out each reason for recovery of the payment." *Id*. § 3.9(i)(1). Finally, a protested payment submitted by EFT must be accompanied by a written protest statement submitted within twenty-four hours of the EFT, and failure to satisfy that requirement "means the tax payment . . . is not considered to be a protest tax payment as provided by Tax Code, § 112.051." *Id*. § 3.9(i)(2)(A), (B).

1st Global contends that because it was not required to make its protest payment by EFT, it received the extension of time to file its protest statement and its protest lawsuit under Section 112.052(b). In essence, its argument is that when a taxpayer seeks and receives an extension of time to file its franchise tax report, if it ultimately files a protest statement along with the report, that entity—regardless of its status in the non-protest context as a taxpayer required to "make its tax payments" by EFT—must then be considered to have received an extension "under Section 171.202(c)." *See* Tex. Tax Code § 112.052(b). However, as set forth below, this reasoning results in statutory language being ignored, rewritten, or treated as surplusage, a result we avoid if possible. *See Sultan v. Mathew*, 178 S.W.3d 747, 751 (Tex. 2005); *Texas Bd. of Chiropractic Exam'rs v. Texas Med. Ass'n*, 375 S.W.3d 464, 476-77 (Tex. App.—Austin 2012, pet. denied).

1st Global's interpretation would require that an EFT tax payment by a taxpayer generally subject to subsection (e) either be given retroactive protest-payment status, if a protest statement is received well after the payment is remitted, or that it remain in limbo during the extension period as neither an extension remittance nor a protest payment. Such a suspension of

status does not square with Section 112.051's general requirement that a taxpayer must inform the Comptroller of the payment's protested status at the time the payment is made, *see* Tex. Tax Code § 112.051, or the Tax Code's specifying the treatment the Comptroller must give to protest payments while not imposing a similar requirement with regard to non-protest payments, *see id.* § 112.058(a) (requiring Comptroller to "maintain detailed records of payments made under protest"); *see also Lincoln Nat'l Life Ins. v. State*, 632 S.W.2d 227, 229 (Tex. App.—Austin 1982, writ ref'd n.r.e.) ("one who voluntarily overpays a tax has no legal claim for its repayment, but one who pays more tax than the law requires, under duress, has such a claim").

In enacting Section 171.202, the legislature provided for different kinds of extensions, depending on whether the taxpayer is "required by rule to make its tax payments by" EFT.[5] The Comptroller thus enacted the rule governing when tax payments must be made by EFT, providing that taxpayers like 1st Global must "transfer all payments in that category of payments or taxes" by EFT. 34 Tex. Admin. Code § 3.9(b)(2). In accordance with the Government Code, *see* Tex. Gov't Code § 404.095(g), the rule specifies that protest payments need not be made by EFT, even when the taxpayer "is otherwise required to pay taxes by means of" EFT, but requires that protest tax payments made by EFT under Section 112.051 "must be accompanied by a written statement that fully and in detail sets out each reason for recovery."

---

[5] Although we might not discern the full reasoning behind the legislature's decision to distinguish between classes of taxpayers, the statutory language clearly draws that distinction, and we are not in a position to second-guess the legislature's unambiguous language. *See Molinet v. Kimbrell*, 356 S.W.3d 407, 414-15 (Tex. 2011) ("It is the Legislature's prerogative to enact statutes; it is the judiciary's responsibility to interpret those statutes according to the language the Legislature used, absent a context indicating a different meaning or the result of the plain meaning of the language yielding absurd or nonsensical results."); *see also Jaster v. Comet II Constr., Inc.*, 438 S.W.3d 556, 569-71 (Tex. 2014) (even if result seems unreasonable, courts may not eschew plain language; instead, the "standard is absurdity," and legislature must fix any mistaken but unambiguous language).

34 Tex. Admin. Code § 3.9(i). Rule 3.9 thus distinguishes between "protested tax payments" and the more general category of tax payments, meaning that a taxpayer may be "required by rule to make its tax payments" by EFT while still being exempted from the EFT requirement when making a protest payment. The exemption of protest payments from the EFT requirement does not mean that a taxpayer that is generally subject to Section 171.202(e) and required to make its tax payments by EFT is later transformed into a taxpayer subject to Section 171.202(c) by a decision to protest communicated to the Comptroller well after the submission of a preliminary, and unprotested—as far as the Comptroller is concerned—tax payment.

Consistent with the Comptroller's interpretation, which is not plainly erroneous or inconsistent with the statutory or regulatory language, *see TGS-NOPEC*, 340 S.W.3d at 438; *Zimmer US*, 368 S.W.3d at 583, we read Rule 3.9 in conjunction with the applicable statutes to allow only a limited exception to the requirement that a protest statement must be filed with a taxpayer's extension request and estimated franchise taxes—an exception available only to smaller taxpayers who, in the non-protest context, are not required to pay taxes by EFT. Rather than allowing the exception to subsume all protest payments regardless of when the protest decision is made and communicated to the Comptroller, as argued by 1st Global, a reading providing for a more limited exception complies with the statutory language and the general requirements of Section 112.051 and Rule 3.9(i). *See TGS-NOPEC*, 340 S.W.3d at 439 (courts must presume that legislature chose language purposefully).

This reading of the applicable statutes and rule better meshes with the statutory language and the legislature's purpose in providing for both protest and refund suits.[6] A protest

---

[6] If a taxpayer believes that it has been required to pay taxes that were "unlawfully or erroneously collected," it may file a claim for refund. Tex. Tax Code § 112.104. If the taxpayer

suit is intended to "provide an adequate legal remedy whereby a taxpayer may test the validity of a tax without having to resort to the traditional equitable remedy of injunction, which would restrain the state's collection of the tax and disrupt the tax-collection process," while a refund suit allows the Comptroller "to refund the payment of certain taxes found to have been paid through mistake of fact or law, thereby relieving the legislature of time-consuming claims made directly to lawmakers." *Strayhorn v. Lexington Ins.*, 128 S.W.3d 772, 779 n.9 (Tex. App.—Austin 2004), *aff'd*, 209 S.W.3d 83 (Tex. 2006). A protest suit "contends that the tax or fee is unlawful or that the public official charged with the duty of collecting the tax or fee may not legally demand or collect the tax or fee," Tex. Tax Code § 112.051(a), and in the franchise-tax context, it is logical to conclude that a taxpayer of such a size that it has paid sufficient taxes in past years to fall within the EFT provisions of Subsection (e) will often know that it believes the franchise-tax framework is invalid or does not apply at the time it seeks an extension to file its report, as opposed to a later refund request that contests the amount of taxes assessed by the Comptroller based on the taxpayer's franchise-tax report.[7]

files a refund claim and exhausts its agency-level remedies as specified by the Tax Code, it may then file suit against the Comptroller seeking a refund. *Id*. § 112.151.

[7] We note that 1st Global knew the grounds for its protest because it had pending requests for refunds from past years and it asserted the same argument in its protest statement. In fact, 1st Global has asserted that it decided to pursue a protest suit because its refund claims had been pending for so long in the Comptroller's office. Although 1st Global might be frustrated if it believes that its refund claims are being unnecessarily delayed by the Comptroller's office, that fact does not relieve it from complying with all of the statutory requirements for bringing a protest suit, assuming that such a suit, as opposed to a refund suit, is the appropriate vehicle for bringing its complaints.

We agree with the Comptroller that 1st Global sought and received an extension under Subsection (e), not Subsection (c).[8] *See id.* § 171.202. Because it was subject to Subsection (e), when it made its estimated franchise payment (via EFT) with no indication that the payment was being made under protest, its later-communicated desire to protest its tax obligation did not operate to retroactively change the payment into a protest payment. *See id.* §§ 112.051 (taxpayer may not file protest suit unless it provides protest statement contemporaneously with protest payment), .052(b) (time for filing protest statement only extended to taxpayer that receives extension under section 171.202(c)).

Because 1st Global received an extension under Subsection (e) of Section 171.202, it was not subject to the exception carved out in Section 112.052(b). Therefore, 1st Global's protest statement was due at the time it filed its payment, *see id.* § 112.051; 34 Tex. Admin. Code § 3.9(i), rather than at the time it filed its franchise-tax report several months later. We therefore sustain the Comptroller's appellate issues and hold that the trial court erred in denying the Comptroller's motion to dismiss.

## CONCLUSION

We have sustained the Comptroller's issues on appeal. We reverse the trial court's denial of the Comptroller's motion to dismiss and render judgment dismissing 1st Global's attempted protest suit.

---

[8] Our conclusion is bolstered by the fact that 1st Global's time to file its franchise-tax report was extended to August 15—the date specified by Section 171.202(e)—rather than to November 15—the deadline specified by Section 171.202(c). *Compare id.* § 171.202(c), *with id.* § 171.202(e).

_____

Jeff Rose, Chief Justice

Before Chief Justice Rose, Justices Triana and Smith

Reversed and Rendered

Filed:   December 12, 2019