# IN THE SUPREME COURT OF TEXAS

══════════
No. 17-0444
══════════

SUNSTATE EQUIPMENT CO., LLC, PETITIONER,

v.

GLENN HEGAR, COMPTROLLER OF PUBLIC ACCOUNTS OF THE STATE OF TEXAS;
AND KEN PAXTON, ATTORNEY GENERAL OF THE STATE OF TEXAS, RESPONDENTS

══════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE THIRD DISTRICT OF TEXAS
══════════════════════════════════════

**Argued October 9, 2019**

JUSTICE GREEN delivered the opinion of the Court.

This case requires us to determine whether a heavy construction equipment rental company may subtract certain delivery and pick-up costs as cost of goods sold (COGS) under section 171.1012 of the Texas Tax Code. Sunstate Equipment first argues that it is entitled to subtract costs under section 171.1012(k-1), and that its costs fall within those specified by section 171.1012(c) and (d). *See* TEX. TAX CODE § 171.1012(c), (d), (k-1). Sunstate reasons that the Texas franchise-tax scheme is based on business models and that we should therefore consider its unique business costs when determining its COGS. Alternatively, Sunstate argues that section 171.1012(i) independently authorizes these cost subtractions because they are part of "the costs" associated with "furnishing

labor or materials to a project for the construction . . . of real property." *Id.* § 171.1012(i). We disagree and affirm the judgment of the court of appeals.

## I. Background

Sunstate is a Delaware limited liability company with headquarters in Phoenix, Arizona. It rents out heavy construction and industrial equipment to customers throughout Texas. The Texas Comptroller audited Sunstate for the 2008 and 2009 taxable years, assessing deficiencies, penalties, and interest totaling $140,495.88. Sunstate paid the amount under protest and brought suit for a refund.

Each party filed a motion for summary judgment. The district court denied the Comptroller's motion and granted Sunstate's motion, ordering a full refund of the amount paid, including interest. The court of appeals reversed and rendered judgment in favor of the Comptroller. 578 S.W.3d 533, 543 (Tex. App.—Austin 2017, pet. granted) (mem. op.). It concluded that Sunstate's interpretation of subsection (k-1) would invert section 171.1012 to make it about a company's revenue rather than its goods. *See id.* at 538. Instead, the court of appeals limited subsections 171.1012(c) through (f) to "costs a business incurs to obtain the goods it will sell, whether through production or acquisition" and not "costs it incurs in selling or distributing the goods." *Id.* (citing TEX. TAX CODE § 171.1012(c)–(f)). The court of appeals believed this position "is logical and consistent with the apparent purpose of subsection (k-1)—to extend to renters of heavy equipment the same COGS deductions available to a company that sells identical equipment." *Id.* at 539. The court recognized that holding otherwise would provide companies like Sunstate with a broader class of subtractions than the statute created without a statutory indication that that was the Legislature's intent. *See id.*

2

The court of appeals agreed with the Comptroller that Sunstate's costs are "more akin to those excluded costs than to any of the allowable costs included in the statute." *Id.* at 540.

The court of appeals disagreed with Sunstate that subsection (i) provided a separate statutory basis to subtract the costs. *Id.* Subsection (i) allows an "entity furnishing labor or materials to a project for the construction, improvement, remodeling, repair, or industrial maintenance . . . of real property" to be considered an owner of that labor and materials and "include the costs, as allowed by . . . section [171.1012], in the computation of cost of goods sold." TEX. TAX CODE § 171.1012(i). The court of appeals first reasoned that "Sunstate may not opt to take a COGS deduction under subsection (i), which might arguably apply, rather than subsection (k-1), which definitely and specifically applies." 578 S.W.3d at 541 (citing *Lexington Ins. Co. v. Strayhorn*, 209 S.W.3d 83, 86 (Tex. 2006)). Alternatively, it concluded that the equipment Sunstate furnished is not "an essential and direct component of the 'project for the construction . . . of real property.'" *Id.* (citations omitted). While Sunstate's customers might be able to benefit from a subsection (i) subtraction, the court of appeals held, Sunstate's labor cannot be "considered a direct component of the improvement projects," nor can its services "be considered an essential component of the projects." *Id.* at 542 (citations omitted). The court concluded that Sunstate's labor is not provided to the project, but instead helps transport and deliver equipment that its customers might use for a project. *See id.* at 541–42. According to the court of appeals, it "would stretch subsection (i) too far" to characterize the delivery and pick up of Sunstate's rental equipment as "labor furnish[ed]" within the meaning of subsection (i). *Id.* at 542 (alterations in original).

3

## II. Standard of Review

Statutory construction is a question of law reviewed de novo. *First Am. Title Ins. Co. v. Combs*, 258 S.W.3d 627, 631 (Tex. 2008). When determining the meaning of a statute, our purpose is to effectuate the Legislature's intent by "giv[ing] effect to every word, clause, and sentence." *Id.* (citation omitted). Therefore, to distill the meaning of a statute, we start with its text and the plain meaning of its words construed within the statute as a whole. *See Combs v. Roark Amusement & Vending, L.P.*, 422 S.W.3d 632, 635 (Tex. 2013) (citation omitted). Unless the statute provides a separate definition, we presume that the Legislature meant to use the ordinary meaning of a word, with each term "interpreted consistently in every part of [the] act." *Tex. Dep't of Transp. v. Needham*, 82 S.W.3d 314, 318 (Tex. 2002) (citation omitted); *see City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008). Only if the text reveals the statute is ambiguous, or applying its plain meaning would produce an absurd result, will we turn to extrinsic sources. *See Tex. Health Presbyterian Hosp. of Denton v. D.A.*, 569 S.W.3d 126, 135–136 (Tex. 2018); *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009).

The Comptroller asserts that we should strictly construe section 171.1012 against the taxpayer because COGS is a deduction tantamount to an exemption. This Court has previously held that tax exemptions must be construed strictly because "they are the antithesis of equality and uniformity and because they place a greater burden on other taxpaying businesses and individuals." *Bullock v. Nat'l Bancshares Corp.*, 584 S.W.2d 268, 272 (Tex. 1979) (citation omitted). But Chapter 171 makes clear that the COGS subtraction is not an exemption. The franchise tax is levied on a taxable entity's "taxable margin." TEX. TAX CODE § 171.002. It is not a tax on revenue. The

COGS subtraction is part of the calculation of taxable margin, for taxable entities that choose that method. *Id.* § 171.101(a). Subtracting COGS from total revenue pursuant to section 171.101(a)(1)(B) does not "exempt" or "deduct" otherwise taxable amounts from taxation. Instead, the subtraction is how the amount subject to tax is determined in the first place.

### III. Stipulated Facts

The parties stipulated facts as to activities that occurred between June 1, 2008 and March 31, 2011. As the court of appeals did, we list the stipulated facts below. *See* 578 S.W.3d at 537.

- Sunstate rented out heavy construction and industrial equipment on an "as needed" basis and qualified as a heavy construction equipment rental or leasing company under section 171.1012(k-1)(2). Its contracts were generally short term, from one day to multiple months, and its customers were usually subcontractors.

- Sunstate operated in the Houston, Dallas–Fort Worth, El Paso, Austin, and San Antonio areas, and most of its customers could not pick up and return the equipment. In about eighty percent of its contracts, Sunstate typically delivered its rental equipment to the construction site and picked it up at the end of the rental term. Sunstate included separate delivery and pick-up charges in the rental fees it charged.

- Sunstate bought and maintained a fleet of delivery vehicles, hired employees to do the deliveries and pick ups, and maintained facilities to store the delivery vehicles, incurring costs for labor provided by the delivery employees, vehicles' depreciation, property tax and insurance costs on the vehicles and related property, and fuel and maintenance expenses for the fleet.

- If Sunstate had not delivered and picked up the equipment, it would not have made rental revenue for those contracts in which it provided delivery and pick up, and "the delivery and pick-up component of Sunstate's business activity was an integral part of its business operations."

- In computing its franchise tax liability, Sunstate deducted its COGS from its total revenue. Sunstate was audited for franchise tax compliance in 2008 and 2009, and the Comptroller disallowed the delivery and pick-up costs as part of the COGS deduction, recategorizing some of the costs as indirect or administrative costs. The Comptroller then assessed deficiencies of $54,776.48 for 2008 and $74,886.05 for 2009, plus penalties and interest.

5

- Sunstate exhausted its administrative remedies and paid the alleged deficiencies, penalties, and interest under protest.

## IV. Applicable Law

Texas's "franchise tax is imposed on each taxable entity that does business in this state or that is chartered or organized in this state." TEX. TAX CODE § 171.001(a). Only entities listed in section 171.0002 of the Texas Tax Code, when not exempt, are liable for franchise tax. *Id.* §§ 171.0002, .051–.088. The Tax Code specifies how a taxable entity's taxable margin—to which the statutorily set franchise tax rate applies—is calculated. *Id.* § 171.101. That calculation begins with total revenue, which may then be adjusted by various methods, one of which allows a taxable entity to, at its election, subtract COGS in calculating taxable margin. *Id.* §§ 171.101, .1011. Specifically, under the statute in effect for purposes of this case, the taxable margin could be calculated as the lesser of (1) "70 percent of the taxable entity's total revenue," or (2) "the taxable entity's total revenue" minus, at the entity's election, "the cost of goods sold, as determined under section 171.1012" or "compensation, as determined under section 171.1013."[1] *Id.* § 171.101(a)(1)(A)(i), (a)(1)(B)(ii)(a). Section 171.1012 addresses what costs can and cannot be

---

[1] The Legislature amended the statute in 2013 to require that a company generate at least a million dollars in total revenue for the franchise tax to apply. *See* Act of May 27, 2013, 83d Leg., R.S., ch. 1232, § 6, 2013 Tex. Gen. Laws 3104, 3106 (codified at TEX. TAX CODE § 171.101(a)(1)(A)(ii)). That amendment does not apply to this case. Under the statute in effect for purposes of this case, a taxable entity is liable for franchise tax regardless of whether its revenue was above or below the million-dollar threshold. *See* Act of May 2, 2006, 79th Leg., 3d., C.S., ch. 1, § 4, 2006 Tex. Gen. Laws 1, 8 (amended 2013).

subtracted from taxable revenue as COGS, as well as which taxable entities are entitled to subtract COGS in calculating taxable margin.[2]  *Id.* § 171.1012.

Section 171.1012, which establishes which entities may subtract what costs, defines "goods" as "real or tangible personal property sold in the ordinary course of business of a taxable entity." *Id.* § 171.1012(a)(1).  Tangible personal property includes "personal property that can be seen, weighed, measured, felt, or touched or that is perceptible to the senses in any other manner." *Id.* § 171.1012(a)(3)(A)(i).  It excludes "services," a term not defined in the statute. *Id.* § 171.1012(a)(3)(B)(ii).  A taxable entity may subtract "all direct costs of acquiring or producing the goods." *Id.* § 171.1012(c).  A taxable entity may also subtract certain indirect costs that are "in relation to the taxable entity's goods." *Id.* § 171.1012(d).  In addition, certain "indirect or administrative overhead costs . . . allocable to the acquisition or production of goods" may be subtracted. *Id.* § 171.1012(f).  But a taxable entity may not subtract certain costs, "includ[ing] . . . distribution costs . . . [and] rehandling costs." *Id.* § 171.1012(e)(3), (6).  The Legislature included subsections (k-1) and (i)—the two subsections at issue here—for companies that could not otherwise subtract COGS.  Subsection (k-1) provides in relevant part:

> Notwithstanding any other provision of this section, the following taxable entities may subtract as a cost of goods sold the costs otherwise allowed by this section in relation to tangible personal property that the entity rents or leases in the ordinary course of business of the entity:

---

[2]  There is no dispute that the version of section 171.1012 in effect in 2008 applies to this case.  *See* Act of May 2, 2006, 79th Leg., 3d C.S., ch. 1, § 5, 2006 Tex. Gen. Laws 1, 8 (amended 2013).  The Legislature has since added additional entities that may subtract COGS.  *See* Act of May 27, 2013, 83d Leg., R.S., ch. 1232, §§ 9–10, 2013 Tex. Gen. Laws 3107, 3107–08 (codified at Tex. Tax Code § 171.1012(k-2), (k-3), (t)).  And it has removed "installation" as a form of "production."  Act of May 2, 2006, 79th Leg., 3d C.S., ch. 1, § 5, 2006 Tex. Gen. Laws 1, 13 *amended by* Act of May 19, 2017, 85th Leg., R.S., ch. 377, § 1, 2017 Tex. Gen. Laws 1038, 1038 (current version at Tex. Tax Code § 171.1012(a)(2)).  Those changes are not as issue here.

7

. . .

    (2) a heavy construction equipment rental or leasing company.

*Id.* § 171.1012(k-1)(2).  Subsection (i) provides in relevant part:

> A taxable entity may make a subtraction under this section in relation to the cost of goods sold only if that entity owns the goods.  The determination of whether a taxable entity is an owner is based on all of the facts and circumstances, including the various benefits and burdens of ownership vested with the taxable entity.  A taxable entity furnishing labor or materials to a project for the construction, improvement, remodeling, repair, or industrial maintenance (as the term "maintenance" is defined in 34 [TEX. ADMIN. CODE] Section 3.357) of real property is considered to be an owner of that labor or materials and may include the costs, as allowed by this section, in the computation of cost of goods sold.

*Id.* § 171.1012(i).  In this case, we must determine whether either of these provisions authorizes Sunstate to subtract its delivery and pick-up costs as COGS.

## V.  Analysis

### A.  Subsection (k-1)

We begin by considering subsection (k-1), as Sunstate focused primarily on that provision in its motion for summary judgment and on appeal, and it was the primary focus of the court of appeals' decision.  *See* 578 S.W.3d at 537–40.  Sunstate argues that subsection (k-1) allows companies that rent or lease out heavy construction equipment to subtract the costs associated with their business, including costs to deliver equipment to and pick equipment up from job sites.

Subsection (k-1) allows certain entities to subtract costs  "in relation to tangible personal property that the entity rents or leases in the ordinary course of business." *Id.* § 171.1012(k-1).  "[A] heavy construction equipment rental or leasing company" is one of three types of businesses entitled to the subtraction under this subsection.  *Id.* § 171.1012(k-1)(2).  Here, the parties stipulated that

8

Sunstate rents out heavy construction and industrial equipment and qualified as a heavy construction equipment rental or leasing company under section 171.1012(k-1)(2). There is no question that Sunstate is the type of entity that qualifies for a COGS subtraction under subsection (k-1).

We next turn to what costs, if any, Sunstate is entitled to subtract as COGS under subsection (k-1). Sunstate categorizes the labor, fuel, depreciation, maintenance, and property tax costs related to its delivery and pick-up of equipment as direct costs that can be subtracted as COGS under section 171.1012(c). *See id.* § 171.1012(c)(1), (3), (6), (8), (11). It categorizes its insurance costs for delivery vehicles and the employees who operate those vehicles as additional costs which are "in relation to" the heavy construction equipment Sunstate rents out and can thus be subtracted as COGS under section 171.1012(d). *See id.* § 171.1012(d)(6). The Comptroller recategorized the costs at issue as administrative or overhead costs that could be subtracted under section 171.1012(f), subject to statutory limitations. *See id.* § 171.1012(f). The court of appeals concluded that the costs at issue could not properly be included in the COGS subtraction and were more akin to costs excluded under section 171.1012(e). 578 S.W.3d at 540; *see* TEX. TAX CODE § 171.1012(e).

To determine what costs Sunstate could subtract as COGS, we begin with the statutory definitions. The statute defines "goods" to mean "real or tangible personal property sold in the ordinary course of business of a taxable entity." TEX. TAX CODE § 171.1012(a)(1). There is no dispute that in this case, the "tangible personal property" is the heavy construction and industrial equipment that Sunstate rents to its customers. Generally, a taxable entity must sell property (real or personal) that it owns to be entitled to a COGS subtraction. *Id.* § 171.1012(a)(1), (i). However, with subsection (k-1), the Legislature provided that certain taxable entities that do not sell their

9

goods but only rent or lease them nevertheless qualify for a COGS subtraction, just as a retailer would. *Id.* § 171.1012(k-1). Under section 171.1012(k-1), Sunstate's "goods" are the heavy construction and industrial equipment that it rents in the ordinary course of business.[3]

## B. COGS

Having determined the meaning of "goods sold" in this context,[4] we next turn to the question of which, if any, costs Sunstate is entitled to subtract in determining its taxable margin. We begin with Sunstate's argument, relying on courts of appeals' opinions, that subsection (k-1)'s use of the term "in relation to" entitles it to subtract any costs incurred that have some reasonable nexus to the goods. *See Hegar v. Gulf Copper & Mfg. Corp.*, 535 S.W.3d 1, 12 (Tex. App.—Austin 2017, pet. granted); *Titan Transp. LP v. Combs*, 433 S.W.3d 625, 637 (Tex. App.—Austin 2014, pet. denied)). A reasonable nexus exists here, according to Sunstate, because the costs at issue were an "integral part" of renting out the heavy equipment, furthered the purpose of providing the equipment to the customers' job sites, and the equipment typically could not have been rented without Sunstate paying those costs.

Subsection (k-1) allows a taxable entity qualifying for a COGS subtraction to "subtract as cost of goods sold the costs otherwise allowable by this section in relation to tangible personal property that the entity rents or leases in the ordinary course of business of the entity." TEX. TAX

---

[3] Sunstate's "goods" do not include any services, however, as the statute excludes services from the definition of "tangible personal property." *See* TEX. TAX CODE § 171.1012(a)(3)(B)(ii).

[4] In light of subsection (k-1)'s provision allowing rental and leasing companies a COGS subtraction despite not selling property in the ordinary course of business, we note that the term "cost of goods sold" is somewhat of a misnomer in this specific context. Nevertheless, we use that term and "COGS" to refer to the costs that can be subtracted pursuant to section 171.1012, as that is terminology used in the statute.

CODE § 171.1012(k-1). Thus, subsection (k-1) specifically limits the COGS subtraction to the COGS determination under other parts of section 171.1012. *Id.* While subsection (k-1) does use the term "in relation to," there is nothing in that subsection that expands or alters the meaning of COGS or the types of costs included and excluded in COGS, as set out in section 171.1012(a) through (f). To the contrary, the statute very clearly provides that a heavy construction equipment rental or leasing company can subtract as COGS the costs that section 171.1012 allows as to equipment that is rented or leased out in the ordinary course of business.

Sunstate further points to a court of appeals' opinion interpreting the phrase "in connection with" from Texas Tax Code section 171.1011(g)(3) to assert that "in relation to" is a "phrase of intentional breadth" within franchise tax cases. *See Titan Transp. LP*, 433 S.W.3d at 637. Of course, we presume that the Legislature chose its words with care and used every phrase with a purpose, and where possible we give effect to every word and phrase so no part of a statute will be rendered meaningless. TEX. GOV'T CODE § 311.021(2); *see City of Dall. v. TCI W. End, Inc.*, 463 S.W.3d 53, 55–56 (Tex. 2015) (per curiam); *First Am. Title Ins. Co.*, 258 S.W.3d at 631. Without addressing the distinction between "in relation to" in section 171.1012 and "in connection with" in section 171.1011, as we need not do so in this case, we read subsection (k-1) in the context of section 171.1012, as the plain language of (k-1) instructs us to do. *See* TEX. TAX CODE § 171.1012(k-1). While it may be possible to read "in relation to" expansively, so that an entity could subtract a cost with even the most tenuous connection to the equipment, we decline to do so here. *See Cadena Comercial USA Corp. v. Tex. Alcoholic Beverage Comm'n*, 518 S.W.3d 318, 327 (Tex. 2017) (citation omitted) ("If an undefined word used in a statute has multiple and broad

definitions, we presume—unless there is clear statutory language to the contrary—that the Legislature intended it to have equally broad applicability."). "[W]e have warned against expansively interpreting broad language when it is immediately preceded by narrow and specific terms." *R.R. Comm'n of Tex. v. Tex. Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 629 (Tex. 2011). And here the Legislature narrowed the eligible subtractions to "the costs otherwise allowed by this section," the narrowing phrase immediately preceding "in relation to." TEX. TAX CODE § 171.1012(k-1).

Reading "in relation to" in its statutory context, we note that section 171.1012(d) allows a taxable entity to subtract as COGS indirect costs that are "in relation to the taxable entity's goods." *Id.* § 171.1012(d). We read "in relation to" in subsection (k-1) to refer to the same sorts of indirect costs covered by subsection (d), so that an entity such as Sunstate can subtract as COGS the indirect costs specified in subsection (d) which relate to its rental of heavy construction and industrial equipment. *See id.*; *Cadena Commercial*, 518 S.W.3d at 328 (construing the term "interest" narrowly because of its surrounding context). However, we note that direct costs of acquiring that equipment would also be "in relation to" the equipment. TEX. TAX CODE § 171.1012(c). In sum, we reject Sunstate's interpretation of subsection (k-1)'s use of "in relation to" and read the phrase in its statutory context to mean that a heavy construction equipment rental or leasing company may subtract as COGS the direct and indirect costs allowable under section 171.1012, as those specific cost provisions relate to the renting and leasing out of equipment. In other words, nothing in subsection (k-1) specifies *what types of costs* a taxable entity may subtract as COGS under the

12

subsection, as the statute specifies that the costs are those "otherwise allowed" by section 171.1012; rather, subsection (k-1) specifies only *what types of entities* are entitled to the COGS subtraction.

The beginning of subsection (k-1) is consistent with our reading. It provides that the COGS subtraction is available to qualifying entities "[n]otwithstanding any other provision." *Id.* § 171.1012(k-1). This language creates an exception to the statute whereby heavy construction equipment rental or leasing companies can subtract COGS despite not actually selling their equipment. *Id.* § 171.1012(c), (k-1). In *Molinet v. Kimbrell*, 356 S.W.3d 407 (Tex. 2011), we interpreted a similar phrase in a different statute. There, a claimant argued that he properly joined two doctors in a health care liability claim after they were designated responsible third parties. *Id.* at 411. Texas Civil Practice and Remedies Code section 33.004(e) allowed a claimant to join designated responsible third parties outside a statute of limitations period if they were joined within 60 days of being designated. *See id.* (discussing TEX. CIV. PRAC. & REM. CODE § 33.004(c)). Section 74.251(a) of the Texas Civil Practice and Remedies Code contained a statute of limitations provision that existed "notwithstanding any other law," barring claims commenced against a defendant more than two years after the occurrence of the allegedly negligent act. *Id.* (discussing TEX. CIV. PRAC. & REM. CODE § 74.251(a)). The claimant added the doctors more than two years after their alleged torts. *See id.* at 409. In construing the statute, we held that section 74.251(a)'s specific pronouncement controlled over section 33.004(e) because section 74.251(a) existed "notwithstanding any other law" and the two provisions were irreconcilable. *See id.* at 412–14. Thus, we recognized that such a "notwithstanding" provision indicates that the provision controls in the event of an irreconcilable conflict with another provision.

Subsection 171.1012(k-1) is irreconcilable with the remainder of section 171.1012 to the extent that (k-1) permits a taxable entity to subtract COGS despite not selling goods in the ordinary course of business—a core requirement evident in the statutory definition of "goods" and in the statute's list of costs that can be included, and not excluded, in the COGS determination. *See* TEX. TAX CODE § 171.1012(a)(1), (c)–(f), (k-1). It is not irreconcilable as to the specific costs that such an entity can subtract because subsection (k-1) specifically provides that a heavy construction equipment rental or leasing company can subtract as COGS those costs otherwise allowed by other provisions of section 171.1012. The Legislature created no new list of costs that equipment rental or leasing companies may subtract as COGS, nor did the Legislature provide in any way that such companies' COGS subtraction may differ from the costs explicitly included and excluded under the other provisions of the statute. Therefore, we conclude that an entity subject to (k-1), such as Sunstate, may subtract as COGS only those costs otherwise allowed by other provisions of section 171.1012.

Sunstate argues that this position is inconsistent with *In re Nestle USA Inc.*, 387 S.W.3d 610 (Tex. 2012), because the franchise tax calculation must account for differences in a company's business model. Sunstate asserts that because the franchise tax is a tax on the "privilege of doing business" in the state, a company's unique costs reflect the value of that privilege. *Id.* at 621. The heart of that privilege is the "opportunity to realize gross income." *Id.* at 622 (citations omitted). For Sunstate, this would mean allowing it to subtract any cost associated with how it realizes income through renting out its equipment, rather than restricting the costs it can subtract to those of a retailer selling the same equipment.

This approach would undermine the discretion we have recognized "the Legislature must have . . . in structuring tax laws," as well as basic principles of interpreting tax statutes. *Id.* at 623; *see also Combs v. Health Care Servs. Corp.*, 401 S.W.3d 623, 627 n.8 (Tex. 2013). Our opinion in *In re Nestle* addressed how to assess the constitutionality of a tax statute. *See generally* 387 S.W.3d 621–23. It provided parameters for protecting more than "a prohibition against irrational [tax] legislation" and described that classification should "affect the value of the privilege" of doing business in the state. *Id.* at 622. The Legislature, in its discretion, has determined that the best way to calculate the taxable value of rental or leasing companies is similar to calculating the taxable value for retailers of the same equipment—by looking at certain tasks that create costs rather than at all costs involved in a company's business.[5] Taking Sunstate's proposed approach would require us to allow costs to be subtracted as COGS that the statute does not permit, essentially ignoring the Legislature's specific lists of costs properly included as COGS. Previously, we have been clear that we will not use "the economic realities of the transactions in issue" to impose new requirements for an exemption. *See Health Care Servs. Corp.*, 401 S.W.3d at 627 n.8; *Roark Amusement & Vending, L.P.*, 422 S.W.3d at 637 n.14. While the COGS subtraction is not an exemption, we likewise will not use an industry's unique business model to impose new COGS requirements that stand to change computation of taxable margin and franchise tax liability, when such a provision "simply is not found in the language of the statut[e]." *See Health Care Servs. Corp.*, 401 S.W.3d at 627 n.8.

---

[5] Sunstate suggests that *In re Nestle* created a new class of costs unique to its industry. In *In re Nestle*, we stated: "[H]eavy construction equipment [rental or leasing companies] . . . may include certain other expenses in their Cost of Goods Sold." 387 S.W.3d at 615. That language recognizes that there may be expenses unique to the rental and leasing industry that falls within one of section 171.1012's COGS categories, which retailers might not incur. It was not meant to create an additional class of costs not included as COGS under the statute, and it most certainly was not meant to undermine the statutory COGS exclusions.

Because the subtraction authorized under subsection (k-1) is limited to the COGS determination under section 171.1012, we must consider subsections 171.1012(c) through (f) to determine whether Sunstate's costs can be included in COGS under those provisions. Subsection (c) allows a taxable entity to subtract "all direct costs of acquiring or producing the goods," and it provides a list of costs included in that category. TEX. TAX CODE § 171.1012(c). While "acquiring" is not defined in the statute, "production" was defined as including "construction, installation, manufacture, development, mining, extraction, improvement, creation, raising, or growth." Act of May 2, 2006, 79th Leg., 3d C.S., ch. 1, § 5, 2006 Tex. Gen. Laws 1, 13 (amended 2017). Subsection (d) allows a taxable entity to subtract indirect costs that need not be for acquiring or producing goods but must be "in relation to the taxable entity's goods," and it provides a list of costs in that category. TEX. TAX CODE § 171.1012(d). Subsection (f) provides that a taxable entity can also subtract "indirect or administrative costs . . . allocable to the acquisition or production of goods," and it gives examples, but the subtraction under subsection (f) is specifically limited in amount. *Id.* § 171.1012(f). Further, subsection (e) lists certain costs that could arguably be considered "in relation to the taxable entity's goods," but are nevertheless excluded. *Id.* § 171.1012(e).

In analyzing the costs at issue and the statutory provisions for included and excluded costs, we remain mindful of lines drawn by the Legislature. The COGS scheme in section 171.1012 distinguishes between costs to acquire or produce goods that will ultimately be sold—included in COGS—from costs incurred in the distribution or selling of goods—excluded from COGS. *Compare id.* § 171.1012(c) ("The cost of goods sold includes all direct costs of acquiring or

16

producing the goods, including [those listed] . . . ."), *with id.* § 171.1012(e)(2), (3) ("The costs of goods sold does not include . . . selling costs . . . [or] distribution costs . . . ."). More specifically, the statute distinguishes between inbound transportation costs—included in COGS—from outbound transportation costs—excluded. *Compare id.* § 171.1012(c)(4) ("The cost of goods sold includes all direct costs of acquiring or producing the goods, including . . . inbound transportation costs . . . ."), *with id.* § 171.1012(e)(3) ("The cost of goods sold does not include . . . outbound transportation costs . . . ."). Similarly, handling costs are included in COGS, while rehandling costs are excluded.[6] *Compare id.* § 171.1012(c)(4) ("The cost of goods sold includes all direct costs of acquiring or producing the goods, including . . . inbound transportation costs . . . ."), *with id.* § 171.1012(e)(6) ("The cost of goods sold does not include . . . rehandling costs . . . ."). And the definition of "goods" itself, as we have mentioned, distinguishes between the property itself—used in determining COGS—from services—excluded as a form of property. *Compare id.* § 171.1012(a)(1) ("'Goods' means real or tangible personal property sold in the ordinary course of business of a taxable entity."), *with id.* § 171.1012(a)(3)(b)(ii) ("'Tangible personal property' does not include . . . services.").

---

[6] We note that section 171.1012(c) includes in COGS "the cost of renting or leasing equipment, facilities, or real property directly used for the production of the goods," and section 171.1012(e) excludes "the cost of renting or leasing equipment, facilities, or real property that is not used for the production of the goods." *Compare* TEX. TAX CODE § 171.1012(c)(7), *with id.* § 171.1012(e)(1). The parties have not argued that these provisions apply in this case.

17

## 1. Direct Costs

Sunstate contends that most of the costs at issue (i.e., costs for labor, fuel, depreciation, maintenance, and property taxes associated with vehicles and labor for delivery and pick up of equipment) are properly categorized as direct costs that can be subtracted as COGS pursuant to section 171.1012(c). *See id.* § 171.1012(c)(1), (3), (6), (8), (11). To be included in COGS under subsection (c), the costs must be "direct costs of acquiring or producing the goods." *Id.* § 171.1012(c).

Sunstate does not contend that any of the costs at issue come from the initial acquisition of its heavy construction equipment. In the stipulated facts, Sunstate agrees that these costs arise out of contracts to deliver equipment to and pick equipment up from the customers' construction sites. We must determine if Sunstate's particular costs relating to delivery and pick up of rented equipment are "direct costs of acquiring or producing the goods." *See id.*

The Legislature did not define the word "acquiring" for purposes of calculating COGS. When the Legislature leaves a word undefined, we will apply the "common, ordinary meaning unless a contrary meaning is apparent from the statute's language." *Tex. State Bd. of Exam'rs of Marriage & Family Therapists v. Tex. Med. Ass'n*, 511 S.W.3d 28, 34 (Tex. 2017) (footnote omitted) (citation omitted); *see Entergy Gulf States, Inc.*, 282 S.W.3d at 437–38. "[W]e consult dictionaries to discern the natural meaning of a common-usage term not defined by contract, statute, or regulation." *Epps v. Fowler*, 351 S.W.3d 862, 866 (Tex. 2011) (citations omitted). The dictionary defines "acquire" to mean "to come into possession, control, or power of disposal." *Acquire*, WEBSTER'S NEW INT'L DICTIONARY (2002). While this definition, by itself, could be

18

understood broadly to mean that one could acquire the same thing over and over, we must read the term in its statutory context. TEX. GOV'T CODE § 311.011(a) ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage."); *see TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 441 (Tex. 2011) (looking to the "statute in its entirety" to interpret a term with various meanings). Here, we must consider the meaning of "acquire" in the context of section 171.1012, including subsection 171.1012(e)'s exclusions. In particular, subsection 171.1012(e)(6) excludes rehandling costs. TEX. TAX CODE § 171.1012(e)(6). While "rehandling" is not defined, it undoubtedly means "handling again." *Rehandle*, WEBSTER'S NEW INT'L DICTIONARY (2002) ("To handle again."); *see TCI W. End, Inc.*, 463 S.W.3d at 55–56 (citation omitted) ("We must avoid adopting an interpretation that 'renders any part of the statute meaningless.'"). By specifically excluding costs associated with handling goods again (and again, in the case of rental goods), the Legislature removed the possibility that an entity could subtract costs for acquiring the same goods repeatedly. Thus, the Legislature narrowed the potentially broad definition of "acquire" to refer to direct costs associated with the initial receipt of goods that will ultimately be sold. When read in conjunction with subsection (k-1), "acquire" then refers to the initial receipt of heavy construction or industrial equipment that will ultimately be rented or leased out. Because Sunstate does not derive the costs at issue from the initial acquisition of its equipment, we hold that the costs cannot be subtracted as direct costs for acquisition of goods under section 171.1012(c).

If the costs at issue here can be subtracted as COGS, they must be direct costs of "producing" goods under section 171.1012(c), or costs that can be subtracted under subsection (d) or (f). The

19

Legislature defined "production" to "include[] construction, installation, manufacture, development, mining, extraction, improvement, creation, raising, or growth." Act of May 2, 2006, 79th Leg., 3d C.S., ch. 1, § 5, 2006 Tex. Gen. Laws 1, 13 (amended 2017). Sunstate seems to suggest that its costs associated with delivery and pick up of equipment are for "production" because they are essential to construction, improvement, and development of real property, noting that real property can be considered "goods" under the statute. *See* TEX. TAX CODE § 171.1012(a)(1). But this erroneously combines the statutory definitions. To be included as COGS that can be subtracted under section 171.1012(c), Sunstate's costs must be directly for the "construction, installation, manufacturer, development, . . . improvement, [or] creation" of "the goods," which we have explained is the heavy construction and industrial equipment that Sunstate rents to customers. *Id.* Notably absent is the term "delivery" as a form of production.[7] Given that section 171.1012(e) excludes "distribution costs, including outbound transportation costs," as well as "rehandling costs" from COGS, *id.* § 171.1012(e)(3), (6), we must presume that the Legislature's omission of "delivery" from the definition of "production" is intentional and purposeful. *See Silguero v. CSL Plasma, Inc.*, 579

---

[7] In the 2017 amendment that removed the term "installation" from the definitions of "production," the Legislature also changed the word "includes" to "means." Act of May 19, 2017, 85th Leg., R.S., ch. 377, § 1, 2017 Tex. Gen. Laws 1038, 1038 (current version at TEX. TAX CODE § 171.1012(a)(2)). It added that the change should not imply that the prior version of section 171.1012 have a meaning "inconsistent with Section 171.1012, Tax Code, as amended by this Act." *Id.* § 2, 2017 Tex. Gen. Laws 1038, 1038. We do not read the change to indicate that delivery could have been a form of production with or without the statutory amendment. If anything, the change only reinforces our conclusion that "production" in section 171.1012 has a specific, understood meaning that does not include delivery of equipment. In some contexts, "produce" is understood to include deliver. *See, e.g.*, TEX. R. CIV. P. 192.3(b). ("A party may obtain discovery of the existence, description, nature, custody, condition, location, and contents of documents and tangible things . . . that constitute or contain matters relevant to the subject matter of the action. A person is required to *produce* a document or tangible thing that is within the person's possession, custody, or control." (emphasis added)). However, when the Legislature specifically defined "production" in the statute here, we must interpret its omission of "deliver" as purposeful, especially given the context of costs included and excluded from COGS. *See Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015) (citation omitted) ("We presume the Legislature included each word in the statute for a purpose and that words not included were purposefully omitted.").

S.W.3d 53, 59 (Tex. 2019) (citations omitted) ("[We] presum[e] that the Legislature intended for each of the statute's words to have a purpose and that the Legislature purposefully omitted words it did not include."). Reading the definitions and statutory provisions together, it seems the Legislature contemplated COGS subtractions for both the costs of acquiring goods ready to sell, as well as costs contributing directly to making goods sellable, while excluding costs associated with transporting goods for sale or goods sold (or, in the context of rental companies, goods rented out). *See, e.g.*, TEX. TAX CODE § 171.1012(c)(2) (including in COGS "cost of materials that are an integral part of specific property produced"); *id.* § 171.1012(c)(3) (including in COGS "cost of materials that are consumed in the ordinary course of performing production activities"). Allowing heavy construction equipment rental or leasing companies to subtract delivery-related costs that contribute to making another entity's goods sellable would go beyond the plain language of the statute.[8]

Sunstate challenges the comparison of its costs to "distribution costs" or "rehandling costs" and asserts that the court of appeals weaponized section 171.1012(e) in allowing such classifications. *Id.* § 171.1012(e)(3), (6). However, the text of subsection (k-1) authorizes COGS to be subtracted as "allowed by this section." *See id.* § 171.1012(k-1). We decline to interpret subsection (k-1) in a way that would encompass the included costs under subsections 171.1012(c) and (d) yet ignore the exclusions under subsection (e). *See Hernandez v. Ebrom*, 289 S.W.3d 316,

---

[8] Sunstate seems to take the position that it could not rent out its equipment if it did not offer delivery and pick up, and that those costs should be included in COGS because they are essential and integral to its business. While we do not doubt that offering delivery and pick up aids Sunstate in renting out its equipment, we note that Sunstate stipulated that about twenty percent of its contracts did not involve delivery or pick up of equipment. More importantly, we are constrained by the language of the statute and the definitions the Legislature provides.

318 (Tex. 2009) (citation omitted) ("Unambiguous statutory language is interpreted according to its plain language unless such an interpretation would lead to absurd results."). We conclude that in enacting subsection (k-1), the Legislature made available to certain rental and leasing companies the same COGS subtraction available to entities in the business of selling goods. In other words, the costs that can be subtracted as COGS under section 171.1012 do not change simply because an entity qualifies for a subtraction under subsection (k-1). Regardless of the business model, the expense must find a home in those costs described as COGS in subsections 171.1012(c) through (f).

To summarize, Sunstate points to section 171.1012(c)(1), (3), (6), (8), and (11) as explicitly authorizing it to subtract its direct costs for labor, fuel, depreciation, maintenance, and property taxes associated with delivery and pick up of equipment it rents to customers. Even assuming that Sunstate's costs generally fit within those listed categories, Sunstate does not derive those costs from the initial acquisition of its equipment or from the production of its equipment. We therefore agree with the court of appeals that those costs are not properly subtracted as COGS under section 171.1012(c). *See* 578 S.W.3d at 540.

## 2. Indirect but Related Costs

Sunstate argues that it is entitled to subtract its insurance costs associated with delivery and pick up as indirect but related costs under section 171.1012(d)(6). *See* TEX. TAX CODE § 171.1012(d)(6). Section 171.1012(d) authorizes a COGS subtraction for "costs in relation to the taxable entity's goods," listing specific costs, including "the cost of insurance on a plant or a facility, machinery, equipment, or materials directly used in the production of the goods." *Id.* Although the costs at issue may be "in relation to" Sunstate's goods, as subsection (d) requires, the listed category

22

of costs at issue here requires more—it requires a direct connection to "production of the goods." *Id.* As we have discussed, "goods" in this case refers to the heavy construction and industrial equipment Sunstate rents out through its contracts. And, as discussed above, Sunstate's costs associated with delivery and pick up of equipment are outside the definition of "production." Sunstate stipulated that it seeks to subtract insurance costs and expenses "for the delivery vehicles and the employees who operated the delivery vehicles." Consistent with our conclusion above, we conclude that the insurance costs associated with delivery and pick up of rental equipment are not "directly used in the production of the goods" within the meaning of section 171.1012.

### 3. Administrative Overhead Costs

The Comptroller recategorized the costs at issue as "administrative overhead costs." *See id.* § 171.1012(f). Section 171.1012(f) authorizes a taxable entity to "subtract as cost of goods sold indirect or administrative overhead costs . . . that it can demonstrate are allocable to the acquisition or production of goods." *Id.* The provision enumerates certain "mixed service costs" that fall within the category of administrative or overhead costs and thus are treated differently from "services" generally. *See id.* § 171.1012(a)(3)(B)(ii), (f). Subsection (f) does not abandon the statute's focus on cost associated with acquiring or producing goods; in fact, it requires that any costs included as COGS under subsection (f) must be "allocable to the acquisition or production of goods." *Id.* § 171.1012(f). Although "allocable" is not defined in the statute, a cost is allocable when it is "apportion[ed] for a specific purpose." *Allocate*, WEBSTER'S NEW INT'L DICTIONARY (2002). Subsection (f) maintains that acquisition and production of goods is that specific purpose. *See TGS-NOPEC Geophysical Co.*, 340 S.W.3d at 441 (determining the meaning of a term by looking to the

"statute in its entirety"). Consistent with our discussion above, we conclude that Sunstate's costs are not properly included as COGS under subsection (f) because they are for the specific purpose of delivering and picking up rental equipment, not for acquiring or producing the equipment.

In sum, subsection (k-1) extends the COGS subtraction otherwise allowed to sellers of goods, allowing heavy construction rental or leasing companies to also benefit from the COGS subtraction available under section 171.1012. A taxable entity can include in its COGS determination certain costs in the initial acquisition or production of a good it sells, rents, or leases; subsection (k-1) does not expand the types of costs that a rental company can subtract as part of its taxable margin calculation. Here, Sunstate admits that its costs are unrelated to acquiring the equipment it will eventually rent. We hold that Sunstate's costs associated with the delivery and pick up of its rental equipment are not costs for producing Sunstate's equipment. For these reasons, subsection (k-1) does not authorize Sunstate to subtract these costs as COGS.

## C. Subsection (i)

Sunstate argues in the alternative that even if subsection (k-1) does not authorize it to subtract its costs associated with delivery and pick up of equipment, subsection (i) provides an independent authorization for subtraction of those costs. Relying on the court of appeals' opinion in *Gulf Copper*, Sunstate reasons that the delivery of equipment to its customers' job sites and the subsequent pick up of the equipment is "an essential and direct component of the project for construction or improvement of real property." *See* 535 S.W.3d at 14 (citing *Combs v. Newpark Res., Inc.*, 422 S.W.3d 46, 56 (Tex. App.—Austin 2013, no pet.)). Sunstate does not assert that it qualifies under subsection (i) because it furnishes materials. *See* TEX. TAX CODE § 171.1012(i).

24

Rather, according to Sunstate, the labor used to provide the equipment qualifies under subsection (i) because it is "an essential and direct component" of the customer's construction projects, which could not occur without the equipment.

As with subsection (k-1), the Legislature in subsection (i) extended the COGS subtraction to entities not otherwise entitled to subtract COGS. *See id.* § 171.1012(a)(1), (k-1), (i). Subsection (i) provides that "[a] taxable entity furnishing labor or materials to a project for the construction, improvement, remodeling, repair, or industrial maintenance . . . of real property is considered to be an owner of that labor or materials." *Id.* § 171.1012(i). Thus, a taxable entity qualifies for a COGS subtraction under subsection (i) if it satisfies two requirements: (1) it furnishes labor or materials, and (2) that labor or materials is furnished to a project for the construction, improvement, remodeling, repair, or industrial maintenance of real property.[9] *See id.* Because the entity is treated as an owner, it "may include the costs, as allowed by this section, in the computation of cost of goods sold." *Id.* (providing that a taxable entity normally may subtract COGS only if it "owns the goods," but an entity that can be considered an owner of labor or materials under subsection (i) may also subtract COGS). In this case, Sunstate contends that it satisfies subsection (i)'s two requirements and is entitled to subtract COGS because it delivers its heavy construction equipment to its customers' job sites and then picks the equipment up from the job sites—furnishing labor to its customers' real property construction projects.

---

[9] Although subsection (c) allows a qualifying entity to include certain labor and materials costs in its COGS calculation, subsection (i) requires a different analysis of labor and materials. *See* TEX. TAX CODE § 171.1012(c)(2), (3). Under subsection (i), an entity's business activities must be evaluated to determine whether it qualifies to subtract COGS as an owner of labor or materials. Thus, it is not the existence of *costs* for labor or materials that qualifies an entity to subtract COGS under subsection (i), it is that the entity "furnish[es] labor or materials to a project for the construction, improvement, remodeling, repair, or industrial maintenance . . . of real property." *Id.* § 171.1012(i).

In determining whether Sunstate qualifies to subtract COGS under subsection (i), we assume that the labor Sunstate provides to deliver and pick up equipment satisfies the first requirement of the analysis—namely, that it "furnish[es] labor" within the meaning of the statute.[10] Turning to the second requirement of the analysis, Sunstate argues that it qualifies to subtract COGS because the labor it provides is essential to its customers' construction projects. Under subsection (i), a taxable entity may subtract COGS only if the labor or materials is furnished "to a project for the construction, improvement, remodeling, repair, or industrial maintenance . . . of real property." *Id.* The Legislature did not define "project." An undefined term will receive its "common, ordinary meaning unless a contrary meaning is apparent from the statute's language." *Tex. State Bd. of Exam'rs of Marriage & Family Therapists*, 511 S.W.3d at 35 (citation omitted). "To determine a statutory term's common, ordinary meaning, we typically look first to [its] dictionary definitions and then consider the term's usage in other statutes, court decisions, and similar authorities." *Id.* (citing *Epps*, 351 S.W.3d at 866). If "an undefined term has multiple common meanings, we apply the definition that is most consistent with its use in the context of the statute." *Beeman v. Livingston*, 468 S.W.3d 534, 539 (Tex. 2015) (citing *State v. $1,760.00 in U.S. Currency*, 406 S.W.3d 177, 180–81 (Tex. 2013)).

---

[10] Although Sunstate argues only that it furnishes labor to construction projects and does not contend that it furnishes materials, we note that the Legislature has drawn a clear distinction between "materials" and "equipment." Each term appears separately in sections 171.1011 and 171.1012, indicating the Legislature's intent that the terms not be treated as synonymous. *See* TEX. TAX CODE §§ 171.1011 (w-1) (referring to "cost of labor, equipment, fuel, and materials"), 171.1012(d)(6) (referring to "the cost of insurance on a plant or a facility, machinery, equipment, or materials"). Thus, furnishing equipment does not equate to furnishing materials within the meaning of section 171.1012(i). *See Needham*, 82 S.W.3d at 318 (citation omitted) ("[T]erms should be interpreted consistently in every part of an act."); *see also* TEX. GOV'T CODE § 311.021(2) (instructing that courts should presume "the entire statute is intended to be effective").

"Project" means "a specific plan or design." *Project*, WEBSTER'S NEW INT'L DICTIONARY (2002). Section 171.1012(i) specifies the type of plan or design to which labor or materials must be furnished, stating that it must be a project "for the construction, improvement, remodeling, repair, or industrial maintenance . . . of real property." TEX. TAX CODE § 171.1012(i). To subtract COGS under subsection (i), a taxable entity cannot simply furnish labor or materials to any type of project; rather, the labor or materials must be furnished to a project that is of the specific type identified in the statute. *Id.* And the statute provides a list of real property projects that will satisfy the second requirement: construction projects, improvement projects, remodeling projects, repair projects, and industrial maintenance projects.[11] *Id.* Thus, within the context of the statute, a COGS subtraction under subsection (i) is available to an entity that contributes labor or materials to another's real property project of one of the types listed.[12] *See Garrett*, 283 S.W.3d at 853 (interpreting terms within the context of the statute); *see also Beeman*, 468 S.W.3d at 539 (citation omitted) ("When an undefined term has multiple common meanings, we apply the definition that is most consistent with its use in the context of the statute."); *Project*, WEBSTER'S NEW INT'L DICTIONARY (2002) (providing an alternative definition for project: "a planned undertaking: . . . as an undertaking devised to effect the reclamation or improvement of a particular area of land").

---

[11] This requirement is akin to the "production" of tangible personal property. TEX. TAX CODE § 171.1012(a) (defining production to include construction, development, and improvement).

[12] An owner of real property that conducts its own real property project would not need to resort to the provision at issue here for subtraction of COGS, as that entity "owns the goods"—the real property—and is therefore entitled to subtract COGS under subsections (c) through (f). *See* TEX. TAX CODE § 171.1012 (a), (c)–(f), (i). When a taxable entity does not own the real property but contributes to the real property owner's project for construction, improvement, remodeling, repair, or industrial maintenance by furnishing labor or materials, that entity qualifies for a COGS subtraction pursuant to the provision of subsection (i) at issue here.

Sunstate certainly provides construction equipment that is ultimately used on real property. In fact, the very purpose of Sunstate's business and the rental agreements it executes with customers is for Sunstate to provide heavy construction equipment for such projects. But, the issue under subsection (i) is not whether Sunstate provides equipment to a real property construction project; rather, the issue is whether Sunstate is correct that the labor furnished in delivering and picking up equipment is provided "to a project for the construction, improvement, remodeling, repair, or industrial maintenance . . . of real property." TEX. TAX CODE § 171.1012(i). In other words, is that labor furnished to the real property owner's construction project? Sunstate admits that the delivery and pick up of equipment is ancillary to the purpose of its contracts—equipment rental. The labor Sunstate expends to move that equipment from one location to another is labor furnished to Sunstate's own project of fulfilling its contractual obligations to provide the equipment to customers. That labor is not furnished to a project for the construction or improvement of real property, within the meaning of the statute.

Sunstate's construction of subsection (i) would amount to a but-for test. Sunstate asserts that its delivery and pick up of construction equipment is an "essential and direct component of the 'project for the construction . . . of real property.'" *See* 578 S.W.3d at 541 (citation omitted). As Sunstate sees it, if the labor is essential to the real property project or if the real property construction or improvement could not occur but for the labor being furnished, then Sunstate contends it qualifies to subtract COGS under subsection (i). But the statute does not contemplate such a test. It prescribes only that the entity "furnish[] labor or materials to a project for the construction . . . of real property." TEX. TAX CODE § 171.1012(i). Because the Legislature did not

include an "essential to" or "but for" element for an entity to qualify under subsection (i), we decline to add one. Indeed, in some sense, almost any labor could be characterized as meeting that test, no matter how remote or indirectly related to the real property. Such an interpretation of the statute would be counter to the Legislature's requirement that labor be furnished "to a project for construction, improvement, remodeling, repair, or industrial maintenance . . . of real property." *Id.* Because Sunstate furnishes labor to fulfill its own obligations under its rental agreements rather than furnishing the labor to another's real property construction project, it cannot be considered "an owner of that labor or materials" for purposes of section 171.1012 and may not include "the costs, as allowed by this section, in the computation of cost of goods sold." *Id.*

## VI. Conclusion

We hold that neither section 171.1012(k-1) nor section 171.1012(i) authorizes Sunstate to subtract as COGS any of its costs associated with the delivery and pick up of its rental equipment. Under section 171.1012(k-1), the Legislature authorized heavy equipment rental or leasing companies to subtract COGS, but the COGS subtraction is limited to the costs allowed under section 171.1012(c) through (f). While Sunstate qualifies as an entity authorized to subtract COGS under subsection (k-1), its costs at issue here are not for acquisition or production of the equipment it rents to customers and do not fall within the allowable direct, related, or administrative overhead costs provided in the statute. Under subsection (i), Sunstate does not "furnish[] labor or materials to a project for the construction, improvement, remodeling, repair, or industrial maintenance . . . of real property," and therefore does not qualify as an entity entitled to subtract COGS. *Id.* Because

29

Sunstate is not entitled to the subtraction it claims under either subsection, we affirm the judgment of the court of appeals.

_____

Paul W. Green
Justice

OPINION DELIVERED: April 3, 2020